1  MESSNER & REEVES, LLC
   Charles C. Cavanagh (CA State Bar No. 198468)
2  1430 Wynkoop Street, Suite 300
   Denver, Colorado 80202
3  Telephone: (303) 623-1800
   Facsimile: (303) 623-0552
4  E-mail: ccavanagh@messner.com

5  SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
   Sascha Henry (CA State Bar No. 191914)
6  333 South Hope Street, 43rd Floor
   Los Angeles, California 90071
7  Telephone: (213) 620-1780
   Facsimile: (213) 620-1398
8  E-mail: shenry@sheppardmullin.com

9  Attorneys for Defendant
   CHIPOTLE MEXICAN GRILL, INC.
10

FILED

2011 SEP 22  AM II: 24

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

11

12            UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14

15                                    )  Case No. CV11-7835-RGK
16  KEVIN SHENKMAN, individually,     )          (RZx)
    and on behalf of other members of the )
17  general public similarly situated )  DEFENDANT CHIPOTLE MEXICAN
                                      )  GRILL, INC.'S NOTICE OF
18            Plaintiffs,             )  REMOVAL UNDER 28 U.S.C. §§ 1441(a)
                                      )  & 1453
19       v.                           )
                                      )
20  CHIPOTLE MEXICAN GRILL, INC.,     )  Removal Date:  September 22, 2011
    a Delaware corporation; and DOES 1 to )  Trial Date:      Not Set
21  100 Inclusive,                    )
                                      )
22            Defendants.             )
                                      )
23

24

25       TO THE CLERK OF THE ABOVE-ENTITLED COURT:

26       PLEASE TAKE NOTICE THAT Defendant Chipotle Mexican Grill, Inc.

27  ("Chipotle"), by and through undersigned counsel, hereby removes this action to this

28  Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453.  This lawsuit is

_____

CHIPOTLE MEXICAN GRILL, INC.'S NOTICE OF REMOVAL

1
2
3
4

MESSNER & REEVES, LLC
Charles C. Cavanagh (CA State Bar No. 198468)
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone: (303) 623-1800
Facsimile: (303) 623-0552
E-mail: ccavanagh@messner.com

5
6
7
8

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
Sascha Henry (CA State Bar No. 191914)
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone: (213) 620-1780
Facsimile: (213) 620-1398
E-mail: shenry@sheppardmullin.com

9

Attorneys for Defendant
CHIPOTLE MEXICAN GRILL, INC.

10

11

12      UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA

14

15

16
17

KEVIN SHENKMAN, individually,
and on behalf of other members of the
general public similarly situated

18              Plaintiffs,

19      v.

20
21

CHIPOTLE MEXICAN GRILL, INC.,
a Delaware corporation; and DOES 1 to
100 Inclusive,

22              Defendants.

23

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

**DEFENDANT CHIPOTLE MEXICAN
GRILL, INC.'S NOTICE OF
REMOVAL UNDER 28 U.S.C. §§ 1441(a)
& 1453**

Removal Date: September 22, 2011
Trial Date:    Not Set

24

25      TO THE CLERK OF THE ABOVE-ENTITLED COURT:

26      PLEASE TAKE NOTICE THAT Defendant Chipotle Mexican Grill, Inc.

27 ("Chipotle"), by and through undersigned counsel, hereby removes this action to this

28 Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453. This lawsuit is

1    independently removable under both Section 1332(a) (individual diversity of

2    citizenship) and Section 1332(d) (class action diversity of citizenship).  In support of

3    such removal, Chipotle states as follows:

4        1.    Complaint Filed on August 19, 2011.  On August 19, 2011, Plaintiff

5    Kevin Shenkman ("Plaintiff"), individually and on behalf of other members of the

6    general public similarly situated, commenced this civil action by filing a Class Action

7    Complaint in the Superior Court of the State of California in and for the County of

8    Los Angeles, captioned Kevin Shenkman, individually and on behalf of other

9    members of the general public similarly situated, Plaintiffs, v. Chipotle Mexican

10   Grill, Inc., and DOES 1 through 100, Defendants, Case No. BC 467980.  True and

11   correct copies of the Civil Case Cover Sheet, Civil Case Cover Sheet Addendum and

12   Statement of Location and Class Action Complaint are attached hereto as **Exhibit A**.

13       2.    Chipotle Served on August 23, 2011.  Chipotle was served with the Class

14   Action Complaint via personal service on August 23, 2011.  True and correct copies

15   of the Summons, Notice of Case Assignment, Alternative Dispute Resolution (ADR)

16   Information Package and Voluntary Efficient Litigation Stipulations packet that were

17   served upon Chipotle are attached hereto as **Exhibit B**.

18       3.    Chipotle Has Not Yet Answered or Responded to the Complaint.

19   Chipotle has not yet filed an Answer, or otherwise responded, to the Class Action

20   Complaint.

21       4.    On September 12, 2011, Chipotle received via mail service a Notice of

22   Non-Complex Designation and Reassignment, to which Plaintiff's counsel attached a

23   Minute Order dated September 1, 2011, designating Plaintiff's lawsuit as non-

24   complex and reassigning it to another Department.  A true and correct copy of the

25   Notice of Non-Complex Designation and Reassignment is attached hereto as **Exhibit**

26   **C**.

27

28

CHIPOTLE MEXICAN GRILL, INC.'S NOTICE OF REMOVAL

5. On September 22, 2011, Chipotle filed in the Los Angeles County Superior Court a peremptory challenge to the assigned Judge. A true and correct copy of that peremptory challenge is attached hereto as **Exhibit D**.

6. Chipotle is unaware of there being any other documents on file with the Los Angeles County Superior Court in this action.

7. <u>Removal Timely</u>. This Notice of Removal is timely filed within 30 days of service of the Class Action Complaint upon Chipotle.

8. The action was pending in the Los Angeles County Superior Court, which court is in the territory of the United States District Court for the Central District of California.

9. <u>Diversity Jurisdiction Proper</u>. This matter is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332(a), and is one which may be removed to this Court by Chipotle pursuant to 28 U.S.C. § 1441(a), in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. This matter is also a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332(d), and is one which may be removed to this Court by Chipotle pursuant to the provisions of 28 U.S.C. §§ 1441(a) & 1453, in that it is a civil class action between citizens of different states; the aggregate matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and the number of members of the proposed plaintiff class is likely to exceed 100.

10. <u>Diversity of Citizenship Exists Between Parties</u>. As discussed in detail below, Chipotle is a Delaware corporation with its principal place of business in the State of Colorado. (*See* Declaration of Robert Wilner ["Wilner Decl."], ¶¶ 4-28 & Exhibits A & B, attached hereto as **Exhibit E**.) Plaintiff alleges that he is a resident of the State of California, and the proposed class consists exclusively of California residents. (Class Action Complaint, ¶¶ 9 & 23.) Therefore, diversity of citizenship exists and supports removal under both 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(d).

CHIPOTLE MEXICAN GRILL, INC.'S NOTICE OF REMOVAL

11.   <u>Chipotle's Principal Place of Business is in Colorado</u>.  Under the "nerve center" test articulated in *Hertz Corp. v. Friend*, __ U.S. __, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010), a corporation's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities."  *Id.* at 1186 (citing *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986); *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959)).  As explained below and in the attached Declaration of Robert Wilner, Chipotle's high level officers direct, control and coordinate Chipotle's activities throughout the United States and internationally from Chipotle's corporate headquarters in Denver, Colorado.

12.   Chipotle is headquartered at 1401 Wynkoop Street, Suite 500, Denver, CO 80202. (*See* Wilner Decl. at ¶ 5 & Exhibit A, p. 1 [identifying 1401 Wynkoop Street, Suite 500, Denver, Colorado 80202, as the address of Chipotle's "Principal Executive Offices"]).  Chipotle employs approximately 150 executive and administrative employees at its headquarters in Denver, Colorado. (*See id.*)  As explained in detail below, the majority of Chipotle's executive officers and principal decision-makers are headquartered in, and work from, Chipotle's Denver offices. (*See id.* at ¶¶ 11-23.)  No officer of the Company lives or has offices in the State of California. (*See id.* at ¶ 24.)

13.   Although Chipotle does maintain a few other offices in other parts of the United States, each such office serves a limited purpose and houses a relatively small number of employees. (*See id.* at ¶¶ 6-10.)

14.   There is a presumption that Chipotle's principal place of business is located at its Denver headquarters. *See Friend*, 130 S. Ct. at 1192 (a corporation's "'principal place of business' … in practice … should normally be the place where the corporation maintains its headquarters") & 1193-94 ("A corporation's 'nerve center,' usually its main headquarters, is a single place."; "A 'nerve center' approach, which ordinarily equates that 'center' with a corporation's headquarters….");

1   *Wisconsin Knife Works*, 781 F.2d at 1282 ("In the absence of any reason to think that

2   Black & Decker's principal place of business might be in Illinois or Delaware, the

3   two states of which the defendant is a citizen, the fact that its headquarters is in

4   Maryland warrants an inference that the parties are of diverse citizenship.").

5        15.   In addition to serving as its headquarters, Chipotle's Denver offices are

6   also its "nerve center" because it is the place from which its "high level officers

7   direct, control, and coordinate the corporation's activities." *Friend*, 130 S. Ct. at

8   1186.

9        16.   Although, as of June 30, 2011 (the date reported in Chipotle's most

10  recently filed Form 10-Q), Chipotle operated 1131 restaurants throughout the United

11  States, as well as in Canada and the United Kingdom (*see* Wilner Decl., ¶ 26 &

12  Exhibit A, p. 5), the operations of those restaurants are directed, controlled and

13  coordinated by the high level officers resident in Chipotle's Denver headquarters.

14  Where, as with Chipotle, "'a corporation is engaged in far-flung and varied activities

15  which are carried on in different states, its principal place of business is the nerve

16  center from which it radiates out to its constituent parts and from which its officers

17  direct, control and coordinate all activities without regard to locale, in the furtherance

18  of the corporate objective.'" *Friend*, 130 S. Ct. at 1191 (quoting *Scot Typewriter Co.*,

19  170 F. Supp. at 865).

20       17.   Chipotle's principal decision makers are its executive officers, executive

21  directors, board of directors and regional directors. (*See* Wilner Decl., ¶ 11.)

22       18.   Each of Chipotle's five executive officers has offices in and works from

23  Chipotle's Denver headquarters, with two of them also working part of their time

24  from a small executive office in New York City. (*See id.* at ¶¶ 12-16.) Chipotle's

25  two co-Chief Executive Officers are the principal executive officers of the

26  corporation and are responsible for the total management of the corporation by

27  facilitating the operation of its business while guiding its officers and employees in

28  furtherance of the company's objectives. (*See id.* at ¶ 13.) One of Chipotle's two co-

- 5 -

Chief Executive Officers works from offices in Chipotle's Denver headquarters, while the other co-Chief Executive Officer splits his time between Chipotle's Denver headquarters and a small executive office located at 71 Gansevoort Street, Suite 2A, New York, New York  10014. (*See id.*)  Chipotle's Chief Financial Officer – who is the corporation's principal financial and accounting officer and is responsible for all financial, accounting and reporting functions of the corporation, as well as for overseeing Information Technology, training, safety, security and risk for the entire corporation – works from Chipotle's Denver headquarters. (*See id.* at ¶ 14 & Exhibit B, p. 34.)  Chipotle's Chief Development Officer – who is responsible for the physical expansion of the corporation by overseeing the identification of new markets for Chipotle restaurants and the construction of new restaurants in appropriate markets, throughout the United States and internationally – works from Chipotle's Denver headquarters. (*See id.* at ¶ 15.)  Chipotle's Chief Marketing Officer – who is responsible for improving the corporation's marketing direction and message, deepening its relationship with customers and continuing to attract new customers, and who oversees all advertising and promotional programs (including print, outdoor, transit and radio advertisements), in-store communications and design elements (such as menus and signs) – splits his time between Chipotle's executive office in New York City and its headquarters in Denver. (*See id.* at ¶ 16.)

19.  Each of Chipotle's four executive directors has offices in and works from Chipotle's Denver headquarters, although Chipotle's Executive Director of International Development currently works primarily from Europe. (*See id.* at ¶¶ 17-21.)  Chipotle's Executive Director of International Development is responsible for the physical expansion of the corporation in international markets through the identification of international markets for Chipotle restaurants and the construction of new restaurants in appropriate international markets and maintains an office in Chipotle's Denver headquarters but currently works primarily from Europe. (*See id.* at ¶ 18.)  Chipotle's Executive Director of IT/Training/PD – who is responsible for

maintaining and improving the corporation's integrated information system, which manages the flow of information within each of Chipotle's restaurants and between the restaurants and the corporate offices in Denver – works from Chipotle's Denver headquarters. (*See id.* at ¶ 19.) Chipotle's Executive Director of Purchasing is responsible for overseeing the procurement of food ingredients, equipment and supplies for all of Chipotle's restaurants, throughout the United States and internationally, and works from an office in Chipotle's Denver headquarters. (*See id.* at ¶ 20.) Chipotle's Executive Director of People Support – who is responsible for the implementation of strategies and policies relating to the management of all Chipotle employees, throughout the United States and internationally, in furtherance of the corporation's objectives – works from Chipotle's Denver headquarters. (*See id.* at ¶ 21.)

20.   Chipotle's board of directors consists of seven members, including Chipotle's two co-CEOs. (*See id.* at ¶ 22.) The members of Chipotle's board of directors are responsible for adopting policies to support the corporation's values and to provide good corporate governance for the entire corporation. (*See id.*) Chipotle's board of directors typically meets three or four times per year in Denver, Colorado, and one time per year in some other, varying location. (*See id.*)

21.   Chipotle also employs in each of the six regions into which its restaurants are divided (i.e., Rocky Mountain, Pacific, Central, South, Mid-Atlantic and Northeast) a Regional Director who is responsible for business operations in his or her region but who reports to the co-Chief Executive Officer resident in Denver, who, along with the other co-Chief Executive Officer, is ultimately responsible for all business operations. (*See id.* at ¶ 23.) Each of the Regional Directors spends the significant majority of his or her time working at, and traveling between, the restaurants in his or her respective region, rather than working from a fixed office location. (*See id.*) Although some of the Regional Directors do have dedicated office space in the small administrative offices that Chipotle maintains in five of the six

1    regions (*see id.*), the Pacific Regional Director – who oversees operations in

2    Washington, Oregon, Nevada and California – does not have a dedicated office at

3    Chipotle's Pacific regional office in Sacramento, California. (*See id.*)

4        22.   In addition, Chipotle's Customer Service department is located in its

5    Denver headquarters. (*See id.* at ¶ 25.)

6        23.   Thus, Chipotle's Denver corporate headquarters is not simply an office

7    where the corporation holds its board meetings or where its principal decision makers

8    can work when they happen to be in Colorado. *See id.* at ¶ 28; *see Friend*, 130 S. Ct.

9    at 1192 (A corporation's "'principal place of business' … should normally be the

10   place where the corporation maintains its headquarters – provided that the

11   headquarters is … not simply an office where the corporation holds its board

12   meetings….").

13       24.   Although Chipotle employs over 29,000 people and operates 1131

14   restaurants throughout the United States, as well as in Canada and the United

15   Kingdom, almost all of the corporation's high level officers who direct, control and

16   coordinate its activities work from Chipotle's Denver headquarters, with two of the

17   executive officers splitting their time between Denver and New York City. (*See*

18   Wilner Decl., ¶ 26.)  Conversely, none of Chipotle's the high level officers who

19   direct, control and coordinate Chipotle's activities regularly works from California.

20   (*See id.* at ¶ 24.)  Of the corporation's several principal decision makers, only the

21   Pacific Regional Director is a resident of California, but even he splits his time

22   working throughout that state and in other states. (*See id.*)  As such, all of Chipotle's

23   core executive and operational functions are carried out from its Denver headquarters,

24   and, to a much lesser extent, from its small executive office in New York City. (*See*

25   *id.* at ¶ 27.)  With the exception of some accounting functions that are performed by

26   employees in Columbus, Ohio, Chipotle's major administrative functions are

27   conducted in its Denver headquarters, as well. (*See id.*)

28

- 8 -

25.   This evidence demonstrates that Chipotle's "nerve center" is its Denver headquarters. *See Friend*, 130 S. Ct. at 1186 ("To support its position [that its "nerve center" was in New Jersey], Hertz submitted a declaration by an employee relations manager that … stated that the 'leadership of Hertz and its domestic subsidiaries is located at Hertz's 'corporate headquarters' in Park Ridge, New Jersey; that its 'core executive and administrative functions … are carried out' there and 'to a lesser extent' in Oklahoma City, Oklahoma; and that its 'major administrative operations … are found' at those two locations."); *Scot Typewriter Co.*, 170 F. Supp. at 864 ("The executive offices of the defendant are located in New York; its president and Chairman of the Board, three of five Vice-Presidents, its Treasurer and Assistant Treasurer, Secretary, Comptroller, Director of Dealer Sales and Director of Installment Sale Collections all maintain offices there. Basic policy decisions are made in the New York office. The personnel, industrial relations, public relations, purchasing, rental and general services, general office sales, international, advertising and sales promotion departments are all headquartered in New York. Customer relations with respect to service, credit, and accounting, affecting sales wherever made, are administered from New York.").

26.   <u>Section 1332(a) Diversity:  The Amount in Controversy Between Plaintiff and Chipotle Exceeds $75,000.00.</u>  For the Court to have original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a), the matter in controversy as between Plaintiff and Chipotle must exceed the sum or value of $75,000, exclusive of interest and costs.  A conservative, good-faith estimate of the value of the claims asserted by Plaintiff in his individual capacity demonstrates that the amount-in-controversy requirement is easily satisfied.[1]

---

[1] Chipotle does not concede that Plaintiff is likely to prevail on any of the asserted claims or that, if Plaintiff does prevail on any of the asserted claims, he is entitled to any damages, punitive damages, attorneys' fees or other relief.  Chipotle reserves the right to dispute, and to defend against, the asserted claims, both with regard to liability and all forms of requested damages and relief.  *See Lewis v. Verizon Comm., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (to establish the jurisdictional amount, a removing defendant need not conceded liability for that amount).

27.   Plaintiff seeks compensatory and general damages – including emotional distress – according to proof; disgorgement and restitution of all monies allegedly wrongfully obtained by Chipotle; injunctive relief – including that Chipotle be mandated to engage in a corrective advertising campaign and to issue an apology; payment to a cy pres fund; punitive damages; and recovery of attorneys' and expert-witness fees. (*See* Class Action Complaint, Prayer for Relief.) The sum or value of these various forms of relief, as sought by Plaintiff in his individual capacity, clearly exceeds the $75,000 threshold.

28.   Indeed, plaintiff's demands for injunctive relief are themselves sufficient to satisfy the amount-in-controversy requirement. Plaintiff demands that the Court issue orders enjoining Chipotle from allegedly misrepresenting or concealing through its in-store advertisements and menus the fact that its pinto beans are cooked with bacon and mandating that Chipotle engage in a corrective advertising campaign. (*See id.* at ¶¶ 57, 67, & Prayer, ¶¶ 9 & 11-12.) "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). In calculating the value of an injunction, the amount in controversy is satisfied if either party can gain or lose the jurisdictional amount. *See In re Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001). Here, the costs to Chipotle of complying with the injunctive relief requested by Plaintiff would far surpass the $75,000 threshold. Engaging in a limited statewide print corrective advertising campaign – a form of relief prayed for by Plaintiff (*see* Class Action Complaint, Prayer, ¶ 11) – consisting of a full-page advertisement being run on one Sunday in the major daily newspapers in each of Los Angeles, San Francisco, San Diego and Sacramento, would cost Chipotle a minimum of $189,400. (*See* Declaration of Ryan Murrin ["Murrin Decl."], ¶ 3 & Exhibit A, attached hereto as **Exhibit F**.) The cost to Chipotle of replacing all of the in-store paper menus in all 181 of its California restaurants would be approximately $21,500. (*See* Declaration of Kirsten Helgeland

CHIPOTLE MEXICAN GRILL, INC.'S NOTICE OF REMOVAL

1   ["Helgeland Decl."], ¶ 4 & Exhibit A, attached hereto as **Exhibit G**.)  The total cost

2   to Chipotle of replacing one menu board in each of its 181 California restaurants with

3   a new menu board indicating that its pinto beans are cooked with bacon would be

4   approximately $12,000.  (*See* Declaration of Shauna Harvey ["Harvey Decl."], ¶ 12,

5   attached hereto as **Exhibit H**.)  Thus, the minimum cost to Chipotle of complying

6   with the various forms of injunctive relief demanded by Plaintiff would be $222,900.

7           29.   Although Plaintiff does not detail the nature or amount of his alleged

8   financial losses or emotional distress, Plaintiff's purported emotional distress claim is

9   also likely to be substantial in light of his allegations that he is both Jewish and a

10  vegetarian but contends that he was nevertheless fraudulently tricked into consuming

11  Chipotle's pinto beans.  (*See* Class Action Complaint, ¶¶ 10, 18-21, 33-34, 43-44, 51

12  & 54.)

13          30.   Plaintiff's claims for punitive damages (*see* Class Action Complaint, ¶ 51

14  & Prayer, ¶ 13) are also included in calculating the amount in controversy.  *See*

15  *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F. 2d 785 (9th Cir. 1963).  While

16  California law does not provide any specific guidance regarding the amount of

17  punitive damages which may, or should, be awarded under Civil Code section 3294,

18  the proper amount of punitive damages under California law is based on the

19  reprehensibility of the defendant's misdeeds, the ratio between compensatory and

20  punitive damages and ratio between damages and the defendant's net worth.  *See*

21  *Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357 (9th Cir. 1994).  Here, in light of

22  the sheer volume of the business that Chipotle conducts in California (*see* ¶ 37, *infra*),

23  the amount of any punitive damages award that may be entered against it could be

24  substantial.

25          31.   Where, as here (*see* Class Action Complaint, Prayer, ¶ 14), attorneys' fees

26  are demanded, such fees are also properly included in calculating the amount-in-

27  controversy.  *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

28

CHIPOTLE MEXICAN GRILL, INC.'S NOTICE OF REMOVAL

1    It is simply not believable that Plaintiff would incur less than $75,000 in attorneys'

2    fees if his individual claims were to proceed through trial.

3         32.   In addition to the foregoing amounts, Plaintiff also seeks disgorgement

4    and restitution of all monies allegedly wrongfully obtained from him by Chipotle and

5    payment of an unspecified amount to a cy pres fund. (*See* Class Action Complaint,

6    ¶¶ 57, 69 & Prayer, ¶¶ 5, 8, 10.)

7         33.   Under the circumstances of this case, it is clear that the total sum or value

8    of the foregoing forms of relief sought by Plaintiff in his individual capacity "more

9    likely than not" exceed the $75,000 amount-in-controversy threshold required for

10   diversity jurisdiction. *See Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 860 (9th

11   Cir. 1996).

12        34.   Section 1332(d) Diversity:  The Aggregate Amount in Controversy

13   Between the Plaintiff Class and Chipotle Exceeds $5,000,000.00.  For the Court to

14   have an independent basis for original jurisdiction over this civil class action pursuant

15   to 28 U.S.C. § 1332(d), the aggregate matter in controversy between the proposed

16   plaintiff class and Chipotle must exceed the sum or value of $5,000,000, exclusive of

17   interest and costs.  A conservative, good-faith estimate of the aggregate value of the

18   claims asserted in this action demonstrates that the amount-in-controversy

19   requirement is satisfied. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676,

20   684 (9th Cir. 2006) ("under § 1332(d)(6), the claims of class members are aggregated

21   to determine whether the amount in controversy exceeds $5,000,000").

22        35.   Plaintiff seeks – on behalf of himself and the proposed class –

23   compensatory and general damages – including emotional distress – according to

24   proof; disgorgement and restitution of all monies allegedly wrongfully obtained by

25   Chipotle; injunctive relief – including that Chipotle be mandated to engage in a

26   corrective advertising campaign and to issue an apology to Plaintiff and all members

27   of the proposed class; payment to a cy pres fund; punitive damages; and recovery of

28   attorneys' and expert-witness fees. (*See* Class Action Complaint, Prayer for Relief.)

1   The sum or value of these various forms of relief, taken together, clearly exceeds the

2   $5,000,000 threshold.

3       36.   Plaintiff seeks to certify a class of all California residents who abstain

4   from consuming bacon or pork but nevertheless purchased Chipotle's pinto beans at

5   any time during the period of four years preceding the filing of the Class Action

6   Complaint and final judgment. (*See id.* at ¶ 23.) Based on that broad proposed class

7   definition, it is likely that Plaintiff's demand for disgorgement and restitution of all

8   revenues allegedly improperly obtained by Chipotle (*see id.* at ¶ 57 & Prayer, ¶¶ 5 &

9   8) would alone suffice to satisfy the amount-in-controversy requirement.

10      37.   Plaintiff filed his Class Action Complaint on August 19, 2011. Therefore,

11  the period of Chipotle's potential liability with respect to the class proposed by

12  Plaintiff commenced on August 19, 2007, and will run through the date of final

13  judgment in this action, which is likely to be more than a year from now.

14      38.   Chipotle's total sales in California since August 19, 2007, have been

15  $1.147 billion. (*See* Harvey Decl., ¶ 4.) Although Chipotle believes that it would be

16  impossible ultimately to track which of those sales actually contained pinto beans,

17  Plaintiff's demand for disgorgement (*see* Class Action Complaint, ¶ 57 & Prayer,

18  ¶¶ 5 & 8) would reach the $5,000,000 amount-in-controversy threshold if Chipotle

19  were required to disgorge less than 0.5% of those sales. Chipotle estimates that

20  approximately $374.5 million of its total sales in California since August 19, 2007,

21  have been of items likely to contain pinto beans (*see* Harvey Decl., ¶¶ 4-11),

22  disgorgement of less than 1.5% of which would satisfy the $5,000,000 requirement.

23      39.   Plaintiff also demands, on behalf of himself and a statewide class,

24  damages, including emotional distress damages. (*See* Class Action Complaint, ¶¶ 33-

25  34, 43-44, 51 & 54.) Plaintiff does not detail the nature or amount of his alleged

26  financial losses or emotional distress. However, Plaintiff's allegations that he is a

27  Jewish vegetarian who was tricked into consuming Chipotle's pinto beans (*see id.* at

28  ¶¶ 10, 18-21, 33-34, 43-44, 51 & 54) are likely to result in a substantial emotional

1   distress claim, if believed.  When aggregated with similar claims for each of the
2   unnamed members of the proposed plaintiff class who abstain from consuming pork
3   for any number of religious, ethnic, moral, health-conscious or other reasons (*see id.*
4   at ¶ 23), Chipotle's potential exposure with respect to the emotional distress claims of
5   the proposed class is likely to be substantial.

6       40.   As discussed above, the minimum cost to Chipotle of complying with the
7   various forms of injunctive relief demanded by Plaintiff would be $222,900.  (*See*
8   ¶ 27, *supra.*)

9       41.   Also as discussed above, punitive damages are included in calculating the
10  amount in controversy.  (*See* ¶ 29, *supra.*)  Given the volume of business that
11  Chipotle conducts in California (*see* ¶ 37, *supra*), Chipotle potential exposure with
12  respect to punitive damages on a class-wide basis is significant.

13      42.   Also as discussed above, demanded attorneys' fees may properly be
14  considered in determining the amount in controversy.  (*See* ¶ 30, *supra.*)  If this
15  lawsuit is certified for class treatment and proceeds through trial, the attorneys' fees
16  of the plaintiff class are likely to be substantial, and add another significant
17  component to the amount in controversy.

18      43.   Again, Plaintiff also demands unspecified payment to a cy pres fund.  (*See*
19  Class Action Complaint, Prayer, ¶ 10.)

20      44.   When the potential costs of disgorgement/restitution; damages, including
21  emotional distress damages; injunctive relief, including an order requiring Chipotle to
22  undertake a corrective advertising campaign; punitive damages; attorneys' fees; and
23  payment to a cy pres fund are considered, it easily becomes "more likely than not"
24  that the aggregate sum or value in controversy in this lawsuit far exceeds the
25  $5,000,000 threshold for diversity jurisdiction pursuant to Section 1332(3).  *See*
26  *Abrego Abrego*, 443 F.3d at 683; *Sanchez*, 95 F.3d at 860.

27      45.   <u>Section 1332(d) Diversity:  The Proposed Plaintiff Class Consists of 100</u>
28  <u>or More Members.</u>  For the Court to have original jurisdiction over this civil class

CHIPOTLE MEXICAN GRILL, INC.'S NOTICE OF REMOVAL

1  action pursuant to 28 U.S.C. § 1332(d), the number of members of all proposed

2  plaintiff classes must also be 100 or more.  Under the circumstances of this case, it is

3  more likely than not that the class proposed by Plaintiff includes at least 100

4  members.

5       46.  Since August 19, 2007, Chipotle has processed 113,914,194 transactions

6  in California, of which Chipotle estimates that approximately 37,209,610 transactions

7  have included items likely to contain pinto beans. (Harvey Decl., ¶¶ 4-10.)  If only

8  0.000269% of those 37,209,610 transactions were to "California residents who

9  abstain from consuming bacon or pork" for religious, ethnic, moral, health-conscious

10  or other reasons (Class Action Complaint, ¶ 23), the numerosity requirement of a

11  plaintiff class consisting of 100 or more members will have been satisfied.  Indeed,

12  Plaintiff himself suggests that the proposed plaintiff class consists of more than 100

13  member by alleging that "[t]he class members are so numerous that joinder of all

14  class members is impracticable."  (*Id.* at ¶ 25(a).)

15       47.  The proposed plaintiff class is also more likely than not to consist of 100

16  or more members when viewed from the perspective of the number of complaints

17  actually received by Chipotle from California customers regarding the fact that

18  Chipotle's pinto beans are cooked with bacon.  Since August 19, 2007, Chipotle has

19  received 15 such complaints via its Internet website, some of which purported to be

20  written on behalf of more than one customer.  (*See* Declaration of Shannon Kyllo

21  ["Kyllo Decl."], ¶ 5, attached hereto as **Exhibit I**.)  Even very conservatively

22  assuming that as many as 1 out of every 7 California customers who was upset to

23  learn that the Chipotle's pinto beans are cooked with bacon would go to the trouble of

24  sending Chipotle a complaint via its Internet website, those 15 complaints would

25  suggest a plaintiff class of 105 individuals, which would be more than sufficient to

26  satisfy the numerosity requirement under 28 U.S.C. § 1332(d).

27

28

48.   For the foregoing reasons, this lawsuit is independently removable under both to 28 U.S.C. § 1332(a) (individual diversity of citizenship) and to 28 U.S.C. § 1332(d) (class action diversity of citizenship).

Dated:  September 22, 2011

MESSNER & REEVES, LLC
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP


By: _____
Charles C. Cavanagh
Attorney for Defendant
CHIPOTLE MEXICAN GRILL, INC.

- 16 -

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | CONFORMED COPY OF ORIGINAL FILED Los Angeles Superior Court |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
— Edwin Aiwazian (SBN 232943)
THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203
TELEPHONE NO.: (818) 265-1020    FAX NO.: (818) 265-1021
ATTORNEY FOR (Name): Plaintiff Kevin Shenkman

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

**CONFORMED COPY OF ORIGINAL FILED**
**Los Angeles Superior Court**

**AUG 19 2011**

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

CASE NAME:
Shenkman vs. Chipotle Mexican Grill, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter | ☐ Joinder | **BC 467980** |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): Five (5)
5. This case ☑ is ☐ is not   a class action suit. (You may use form CM-015.)
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 19, 2011
Edwin Aiwazian
(TYPE OR PRINT NAME)          *[signature]*          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

BY FAX

**EXHIBIT A**

| SHORT TITLE: Shenkman vs. Chipotle Mexican Grill, Inc. | CASE NUMBER: BC 467980 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES    CLASS ACTION? ☑ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 8   ☐ HOURS/ ☑ DAYS

Item II. Indicate the correct district and courthouse location (4 steps – if you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check one Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties resides.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| **Auto Tort** Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

BY FAX

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.0
Page 1 of 4

| SHORT TITLE: Shenkman vs. Chipotle Mexican Grill, Inc. | CASE NUMBER | |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons –<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach –Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: Shenkman vs. Chipotle Mexican Grill, Inc. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons –<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ – Other Limited Court Case Review | 2., 8.<br>2.,<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

| SHORT TITLE: Shenkman vs. Chipotle Mexican Grill, Inc. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>28905 Wight Road |
|---|---|
| CITY: Malibu | STATE: CA | ZIP CODE: 90265 | |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the _Stanley Mosk_ courthouse in the _Central_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: _August 19, 2011_

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4



1   Edwin Aiwazian (SBN 232943)
    THE AIWAZIAN LAW FIRM
2   410 West Arden Avenue, Suite 203
    Glendale, California 91203
3   Telephone (818) 265-1020
    Facsimile  (818) 265-1021
4
    *Attorneys for* Plaintiff
5

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 19 2011

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
    SHAUNYA WESLEY

6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

10  KEVIN SHENKMAN, individually,        ) Case No.
    and on behalf of other members of the )
11  general public similarly situated,    )                BC 467980
                                          )
12                      Plaintiffs,       ) CLASS ACTION COMPLAINT
                                          )
13             vs.                        ) (1) Intentional Misrepresentation
                                          ) (2) Negligent Misrepresentation
14  CHIPOTLE MEXICAN GRILL, INC.,         ) (3) Fraud
    a Delaware corporation; and DOES 1    ) (4) Violation of California's False
15  through 100, inclusive,               )     Advertising Act, California Bus.
                                          )     & Prof. Code sections 17500, et seq.
16                      Defendants.       ) (5) Violation of California's Unfair
                                          )     Business Practices Act, California Bus.
17                                        )     & Prof. Code sections 17200, et seq.
                                          )
18                                        ) DEMAND FOR JURY TRIAL

19

20

21

22

23

24

25

26

27

28                                                                          1

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

BY FAX

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff KEVIN SHENKMAN ("Plaintiff"), individually, and on behalf
of other members of the general public similarly situated, and alleges as follows:

**INTRODUCTION**

1.   This case is brought on behalf of all California based consumers who have
purchased/consumed "Pinto Beans" from or at a CHIPOTLE MEXICAN GRILL, INC.
restaurant and have concerns, objections, or dietary restrictions, whether ethical, religious, moral,
cultural philosophical, or health-related, with regard to the consumption of food containing
bacon or pork.

2.   Due to false and deceptive business practices and representations, CHIPOTLE
MEXICAN GRILL, INC. has misled the general public into believing that its "Pinto Beans,"
offered at CHIPOTLE MEXICAN GRILL, INC. restaurants is vegetarian.

3.   CHIPOTLE MEXICAN GRILL, INC.'s "Pinto Beans" will hereinafter be
referred to as the "Subject Food Product."

4.   Since it began operating restaurants in the State of California to the present,
CHIPOTLE MEXICAN GRILL, INC. restaurants have failed to reasonably, equitably, or
adequately inform California based consumers that the Subject Food Product is prepared with
and/or contain bacon or pork.

**JURISDICTION AND VENUE**

5.   This class action is brought pursuant to the California Code of Civil Procedure
section 382.   The monetary damages and restitution sought by Plaintiff exceeds the minimal
jurisdiction limits of the Superior Court and will be established according to proof at trial.   The
amount in controversy for Plaintiff, including claims for compensatory damages, interest, and
pro rata share of attorneys' fees, is less than $75,000.

6.   This Court has jurisdiction over this action pursuant to the California
Constitution, Article VI, Section 10, which grants the superior court "original jurisdiction in all
other causes" except those given by statute to other courts.   The statutes under which this action
is brought do not specify any other basis for jurisdiction.

///

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

2

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

7.      This Court has jurisdiction over Defendants because, upon information and belief, Defendants are citizens of California, have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

8.      Venue is proper in this Court because, upon information and belief, Defendants maintain offices, have agents, and/or transact business in the State of California, County of Los Angeles.  Plaintiff resides in the State of California, County of Los Angeles and the acts and omissions alleged herein took place in the State of California, County of Los Angeles.

## PARTIES

9.      Plaintiff KEVIN SHENKMAN ("Plaintiff") resides in the County of Los Angeles, State of California.

10.     Plaintiff is a Vegetarian and Jew.

11.     Defendants CHIPOTLE MEXICAN GRILL, INC. is a Delaware corporation (hereinafter referred to as "CHIPOTLE"), and transacts business in the County of Los Angeles, State of California.

12.     The true names and capacities, whether corporate, associate, individual or otherwise, of defendants DOES 1 through 100, inclusive, are unknown to Plaintiff who sues said defendants by such fictitious names.  Plaintiff is informed and believes, and based on that information and belief alleges, that each of the defendants herein designated as a DOE is legally responsible for the events and happenings referred to in this Complaint, and unlawfully caused the damages to Plaintiff and the class members alleged in this Complaint.  Plaintiff will seek leave of court to amend this Complaint to show the true names and capacities when the same has been ascertained.

13.     At all times herein relevant, CHIPOTLE and DOES 1 through 100, and each of them, were the agents, partners, joint venturers, representatives, servants, employees, successors-in-interest, co-conspirators and assigns, each of the other, and at all times relevant hereto were acting within the course and scope of their authority as such agents, partners, joint venturers,

3

1   representatives, servants, employees, successors, co-conspirators and assigns, and that all acts or

2   omissions alleged herein were duly committed with the ratification, knowledge, permission,

3   encouragement, authorization and consent of each defendant designated herein.

4       14.    Defendants CHIPOTLE and DOES 1 through 100 will hereinafter be collectively

5   referred to as Defendants.

## FACTS

7       15.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant

8   times mentioned in this Complaint, CHIPOTLE has owned and operated CHIPOTLE restaurants,

9   a national fast food chain, with approximately 900 restaurants across the United States.

10  CHIPOTLE currently owns and operates more than 100 CHIPOTLE restaurants in the State of

11  California, including the County of Los Angeles.

12      16.    Plaintiff is informed and believes, and based thereon alleges, that Defendants fail

13  to disclose in their in-store menus that the Subject Food Product is prepared with and/or contains

14  bacon and/or pork.

15      17.    At all times mentioned in this Complaint, Defendants through their in-store menus

16  have suppressed and concealed and continue to suppress and conceal the fact that the Subject

17  Food Product is prepared with and/or contains bacon and/or pork.  For example, Defendants do

18  not state anywhere on their in-store display menus that the Subject Foods Product is prepared

19  with and/or contains bacon and/or pork.

20      18.    At all times herein relevant, Plaintiff purchased and ate Defendants' "Pinto

21  Beans" at various locations in the County of Los Angeles believing and having been led to

22  believe that it was not prepared with nor did it contain bacon and/or pork.

23      19.    Plaintiff specifically asked whether Defendants' "Pinto Beans" was prepared with

24  and/or contained bacon and/or pork and was explicitly informed by one or more of Defendants'

25  servers (and/or shift supervisors) that the "Pinto Beans" were not prepared with and did not

26  contain bacon and/or pork.  Plaintiff relied upon such representations to his detriment.

27  Furthermore, Plaintiff reasonably assumed Defendants' "Pinto Beans" were not prepared with

28  and did not contain bacon and/or pork since there were no representations made to the contrary.

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

4

1        20.    Plaintiff is informed and believes, and based thereon alleges, that Defendants

2    concealment of the fact that their "Pinto Beans" are prepared with and/or contain bacon or pork,

3    and being explicitly informed that the "Pinto Beans" were not prepared with and did not contain

4    bacon or pork, was the immediate cause of Plaintiff and the other class members consuming said

5    the Subject Food Product.

6        21.    Plaintiff is informed and believes, and based thereon alleges, as a result of

7    Defendants' false and misleading representations, as alleged herein, Plaintiff has suffered

8    damages including, but not limited to, monetary loss, caused by the fact he was misled by

9    Defendants' in-store display menus/representations/advertisements and/or Defendants' servers

10   (and/or shift supervisors) into consuming the Subject Food Product, which was prepared with

11   and/or contained bacon and/or pork.

12   **CLASS ALLEGATIONS**

13       22.    Plaintiff brings this action on his own behalf and on behalf of all other members

14   of the general public similarly situated, and, thus, seeks class certification under Code of Civil

15   Procedure section 382.

16       23.    The proposed class is defined as follows:

17           All California residents who abstain from consuming bacon or pork, who were

18           exposed to CHIPOTLE's in store advertisements menus, and who purchased the

19           Subject Food Product ("Pinto Beans") at or from a CHIPOTLE restaurant located

20           in the State of California at anytime during the period of four years preceding the

21           filing of the Complaint to final judgment.

22       24.    Plaintiff reserves the right to establish subclasses as appropriate.

23       25.    The class is ascertainable and there is a well-defined community of interest in the

24   litigation:

25           a.    Numerosity: The class members are so numerous that joinder of all class

26               members is impracticable.  The membership of the entire class is unknown

27               to Plaintiff at this time.

28   ///

THE AIWAZIAN LAW FIRM<br/>410 West Arden Avenue, Suite 203<br/>Glendale, California 91203

5

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

b.   Typicality: Plaintiff's claims are typical of all other class members' as demonstrated herein.  Plaintiff will fairly and adequately protect the interests of the other class members with whom he has a well-defined community of interest.

c.   Adequacy: Plaintiff will fairly and adequately protect the interests of each class member, with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein.  Plaintiff has no interest that is antagonistic to the other class members.  Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement.  Plaintiff has incurred, and during the pendency of this action will continue to incur, costs and attorneys' fees, that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

d.   Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual joinder of all class members is impractical.

e.   Public Policy Considerations: Certification of this lawsuit as a class action will advance public policy objectives.  Businesses of this great state violate consumer protection laws every day.  Therefore, this action will allow for the vindication of consumers' rights with respect to the Subject Food Product.

26.   There are common questions of law and fact as to the class members that predominate over questions affecting only individual members. The following common questions of law or fact, among others, exist as to the members of the class:

a.   Whether Defendants engaged in a pattern or practice of concealing, suppressing and/or misrepresenting in their in-store display menus the fact that the Subject Food Product was prepared with and/or contained pork or bacon.

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

6

THE AWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

b. Whether Defendants thereby engaged in consumer fraud, deceptive trade practices, or other unlawful acts.

c. Whether class members are entitled to damages including punitive damages, restitution, disgorgement of profits, and injunctive relief, and the proper measure, nature and extent of such relief.

## FIRST CAUSE OF ACTION

### (Intentional Misrepresentation)

### (Against CHIPOTLE and DOES 1 through 100)

27. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 26, and each and every part thereof with the same force and effect as though fully set forth herein.

28. Defendants represented to Plaintiff and the other class members that important facts were true. More specifically, Defendants represented to Plaintiff and the other class members through their in-store menus that that the Subject Food Product was not prepared with and did not contain pork or bacon.

29. Defendants' representations were false.

30. Defendants knew that the representations were false when Defendants made them, or that the Defendants made the representations recklessly and without regard for their truth.

31. Defendants intended that Plaintiff and the other class members rely on the representations.

32. Plaintiff and the other class members reasonably relied on Defendants' representations.

33. Plaintiff and the other class members were financially harmed and suffered other damages including, but not limited to, emotional distress.

34. Plaintiff's and the other class members' reliance on Defendants' representations was the immediate cause of the financial loss and emotional distress sustained by Plaintiff and the other class members.

///

35. Defendants' misrepresentation and/or nondisclosure were the immediate cause of Plaintiff and the other class members purchasing the Subject Food Product.

36. In absence of Defendants' misrepresentation and/or nondisclosure, as described above, Plaintiff and the other class members, in all reasonable probability, would not have purchased the Subject Food Product.

## SECOND CAUSE OF ACTION

### (Negligent Misrepresentation)

### (Against CHIPOTLE and DOES 1 through 100)

37. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 36, and each and every part thereof with the same force and effect as though fully set forth herein.

38. Defendants represented to Plaintiff and the other class members that important facts were true.

39. Defendants' representations were not true.

40. Defendants had no reasonable grounds for believing the representations were true when Defendants made it.

41. Defendants intended that Plaintiff and the other class members rely on the representations.

42. Plaintiff and the other class members reasonably relied on Defendants' representations.

43. Plaintiff's and the other class members' reliance on Defendants' representation was a substantial factor in causing the financial loss and emotional distress sustained by Plaintiff and the other class members.

44. Defendants' negligent misrepresentation and/or nondisclosure was the immediate cause of Plaintiff and the other class members purchasing the Subject Food Product from Defendants, and thereby sustaining monetary loss and emotional distress.

///

///

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

8

45.     In absence of Defendants' negligent misrepresentations and/or nondisclosure, as described above, Plaintiff and the other class members, in all reasonable probability, would not have purchased the Subject Food Product from Defendants.

### THIRD CAUSE OF ACTION

### (Fraud)

### (Against CHIPOTLE and DOES 1 through 100)

46.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45, and each and every part thereof with the same force and effect as though fully set forth herein.

47.     The misrepresentations, nondisclosure and/or concealment of material facts made by Defendants to Plaintiff and the other class members, as set forth above, were known by Defendants to be false and material and were intended by Defendants to mislead Plaintiff and the other class members.

48.     Plaintiff and the other class members were actually misled and deceived and were induced by Defendants to purchase the Subject Food Product.

49.     Defendants' misrepresentation and/or nondisclosure were the immediate cause of Plaintiff and the other class members purchasing the Subject Food Product.

50.     In absence of Defendants' misrepresentation and/or nondisclosure, as described above, Plaintiff and the other class members, in all reasonable probability, would not have purchased the Subject Food Product.

51.     As a result of Defendants' conduct, Plaintiff and the other class members have been damaged financially and have suffered other damages including, but not limited to, emotional distress.  In addition to such damages, Plaintiff and the other class members seek punitive or exemplary damages pursuant to Civil Code section 3294 in that Defendants engaged in "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant[s] with the intention on the part of the defendant[s] of thereby depriving a person of property or legal rights or otherwise causing injury."

///

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

9

THE AWWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

## FOURTH CAUSE OF ACTION

### (Violation of the California False Advertising Act –

### Business & Professions Code §§ 17500, et seq.)

### (Against CHIPOTLE and DOES 1 through 100)

52.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 51, and each and every part thereof with the same force and effect as though fully set forth herein.

53. .     Defendants engaged in unfair and deceptive acts and practices, in violation of California Business and Professions Code § 17500, et seq., by marketing and/or selling the Subject Food Product without disclosure of the material facts that the Subject Food Product was prepared with and/or contained pork or bacon.

54.     These acts and practices, as described above, have deceived Plaintiff and other class members, causing them to lose money and suffer emotional distress as herein alleged, and have deceived and are likely to deceive the consuming public, in violation of those sections. Accordingly, Defendants' business acts and practices, as alleged herein, have caused injury to Plaintiff and the other class members.

55.     Defendants' misrepresentation and/or nondisclosure of the fact that the Subject Food Product was prepared with and/or contained bacon and/or pork were the immediate cause of Plaintiff and the other class members purchasing the Subject Food Product.

56.     In absence of Defendants' misrepresentation and/or nondisclosure, as described above, Plaintiff and the other class members would not have purchased the Subject Food Product.

57.     Plaintiff and the other class members are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business acts or practices, and enjoining Defendants to cease and desist from engaging in the practices described herein.

///

///

10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

### FIFTH CAUSE OF ACTION

#### (Violation of the California Unfair Business Practices Act –

#### Business & Professions Code §§ 17200, et seq.)

#### (Against CHIPOTLE and DOES 1 through 100)

58.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 57, and each and every part thereof with the same force and effect as though fully set forth herein.

59.     California Business and Professions Code section 17200 prohibits any "unfair deceptive, untrue or misleading advertising." For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code section 17200, et seq.

60.     California Business & Professions Code section 17200 also prohibits any "unlawful . . . business act or practice." Defendants have violated Sections 17200, et seq.'s prohibition against engaging in unlawful acts and practices by, among other things, making the representations and omissions of material facts, as set forth herein, and violating, among other things, Section 1770 of the Consumers Legal Remedies Act.

61.     Plaintiffs and the other class members reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

62.     California Business & Professions Code sections 17200, et seq. also prohibits any "unfair . . . business act or practice." Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, et seq. in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Plaintiff asserts violations of the public policy of engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. There were reasonably available alternatives to further Defendants' legitimate business interests,

11

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   other than the conduct described herein.  This conduct constitutes violations of the unfair prong

2   of California Business & Professions Code sections 17200, et seq.

3          63.    Business & Professions Code sections 17200, et seq. also prohibits any

4   "fraudulent business act or practice."  Defendants' claims, nondisclosures, and misleading

5   statements, as set forth above, were false, misleading, and/or likely to deceive the consuming

6   public within the meaning of Business & Professions Code sections 17200, et seq.  Defendants'

7   business acts and practices are fraudulent because they are likely to, and in fact, did deceive

8   consumers, including Plaintiff and the other class members, into believing that the Subject Food

9   Product was not prepared with and/or did not contain bacon and/or pork.

10         64.    Defendants' misrepresentations and/or nondisclosure of the fact that the Subject

11   Food Product was prepared with and/or contained bacon and/or pork were the immediate cause

12   of Plaintiff and the other class members purchasing the Subject Food Product.

13         65.    As a result of Defendants' misrepresentations and omissions, Plaintiffs and

14   members of the putative class lost money or property because had they known the Subject Food

15   Product was prepared with and/or contained bacon/and or pork, they would not have purchased it

16   from Defendants, but rather, they would have used their money to purchase another product.

17         66.    Defendants' conduct caused and continues to cause substantial injury to Plaintiff

18   and the other class members.  Plaintiff and the other class members have suffered injury in fact

19   and have lost money as a result of Defendants' wrongful conduct.

20         67.    Pursuant to Business & Professions Code section 17203, Plaintiff and the other

21   class members seek an order requiring Defendants to immediately cease such acts of unlawful,

22   unfair, and fraudulent business practices and requiring Defendants to engage in a corrective

23   advertising campaign.

24         68.    Unless Defendants are enjoined from continuing to engage in these unfair,

25   unlawful and fraudulent business practices, Plaintiff and the other class members will continue to

26   be injured by Defendants' actions and conduct.

27   ///

28   ///

12

1    -69.    Defendants have thus engaged in unlawful, unfair, and fraudulent business acts

2   and practices, entitling Plaintiff and the other class members to judgment and equitable relief

3   against Defendants, as set forth in the Prayer for Relief, including full restitution and/or

4   disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been

5   obtained by Defendants as a result of such business acts or practices, and enjoining Defendants

6   to cease and desist from engaging in the practices described herein.

7                              **PRAYER FOR RELIEF**

8       WHEREFORE, Plaintiff, individually and on behalf of all other members of the general

9   public similarly situated, prays for relief and judgment against CHIPOTLE and DOES 1 through

10   100, and each of them, jointly and severally, as follows:

11                              **Class Certification**

12    1.    That this action be certified as a class action;

13    2.    That Plaintiff be appointed as the class representative;

14    3.    That counsel for Plaintiff and the putative class be appointed as class counsel;

15                   **As to the First through Fifth Causes of Action**

16    4.    That Plaintiff and the other class members be awarded compensatory and general

17   damages according to proof;

18    5.    That Plaintiffs and the other class members be awarded disgorgement and

19   restitution of all monies wrongfully obtained and retained by Defendants;

20    6.    That Plaintiffs and the other class members be awarded interest on the monies

21   wrongfully obtained from the date of collection through the date of entry of judgment in this

22   action;

23    7.    That Plaintiffs and the other class members be awarded compensatory and general

24   damages according to proof;

25    8.    That Plaintiff and the putative class be awarded restitution and/or disgorgement

26   and other equitable relief as the Court deems proper;

27    9.    For injunctive relief to ensure compliance with the California False Advertising

28   Act and the California Unfair Business Practices Act;

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

13

10.  That Defendants be mandated to make a payment to a cy pres fund;

11.  That Defendants be mandated to engage in a corrective advertising campaign to correct the misperceptions that Defendants' deceptive, false and misleading acts have created;

12.  That Defendants be mandated to issue an apology to Plaintiff and the other class members;

13.  That Plaintiff and the other class members be awarded punitive damages as to the appropriate cause of action;

14.  That Plaintiff and the other class members be awarded their reasonable attorneys', expert-witness fees, and other costs pursuant to statutes as may be applicable; and

15.  All such other and further relief as the Court deems just and proper.

Dated: August 18, 2011                    THE AIWAZIAN LAW FIRM

By: _____
    Edwin Aiwazian
    *Attorneys for* Plaintiff

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

14

1                                   **DEMAND FOR JURY TRIAL**

2          Plaintiff, KEVIN SHENKMAN, on behalf of himself and all other members of the

3  general public similarly situated, hereby demands a jury trial.

4  Dated: August 18, 2011                 **THE AIWAZIAN LAW FIRM**

5

6

7                  By:          *Edwin Aiwazian*

8                        Edwin Aiwazian
                         *Attorneys for* Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

15

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 19 2011

John A. Clarke, Executive Officer/Clerk
By_____, Deputy
SHAUNYA WESLEY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CHIPOTLE MEXICAN GRILL, INC., a Delaware corporation; and
DOES 1 through 100, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

KEVIN SHENKMAN, individually, and on behalf of other members of
the general public similarly situated.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court

**CASE NUMBER:**
*(Número del Caso):* **BC467980**

Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, California 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Edwin Aiwazian, The Aiwazian Law firm, 410 W. Arden Ave., Suite 203, Glendale, CA 91203 (818) 265-1020

DATE:                                     Clerk, by_____, Deputy
*(Fecha):* AUG 19 2011     *(Secretario)*  Shaunya Wesley     *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Chipotle Mexican Grill, Inc. a Delaware corporation.

   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

## SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

BY



EXHIBIT

B

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

Case Number _____  BC 467980

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3(c)). There is additional information on the reverse of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 | |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 | |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 | |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allan White | 48 | 506 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirde Hill | 49 | 509 | |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 | |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 | |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Steven J. Kleifield | 53 | 513 | |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 | |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. Barbara Scheper | 30 | 400 | Hon. David L. Minning | 61 | 632 | |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 | |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 | |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 | |
| Hon. Michael C. Solner | 39 | 415 | **Hon. Emilie H. Elias\*** | **324** | **CCW** | |
| Hon. Michelle R. Rosenblatt | 40 | 414 | Other | | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | | |

**\*Class Actions**
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____   JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Seven Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE**
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint.(Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

  **Cases for Which Mediation May Be Appropriate**
  Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

  **Cases for Which Mediation May Not Be Appropriate**
  Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding arbitration* means that the parties are free to request a trial if they do not accept the arbitrator's decision.

  **Cases for Which Arbitration May Be Appropriate**
  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

  **Cases for Which Arbitration May Not Be Appropriate**
  If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

  **Cases for Which Neutral Evaluation May Be Appropriate**
  Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

  **Cases for Which Neutral Evaluation May Not Be Appropriate**
  Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

LAADR 005 (Rev. 05/09)
LASC Approved 10-03

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:
- Civil Action Mediation (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- Retired Judge Settlement Conference
- Neutral Evaluation (Governed by Los Angeles Superior Court Rules, chapter 12.)
- Judicial Arbitration (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- Eminent Domain Mediation (Governed by Code of Civil Procedure section 1250.420.)
- Civil Harassment Mediation
- Small Claims Mediation

FAMILY LAW (non-custody):
- Mediation
- Forensic Certified Public Accountant (CPA) Settlement Conference
- Settlement Conference
- Nonbinding Arbitration (Governed by Family Code section 2554.)

PROBATE:
- Mediation
- Settlement Conference

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

| Party Select Panel | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
|---|---|
| Random Select Panel | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| Private Neutral | The market rate for private neutrals can range from $300-$1,000 per hour. |

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY, STATE, ZIP | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-8072 | (310)223-0357 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-5972 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)402-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3185 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-5151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)393-4639 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)974-2357 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

LAADR 005 (Rev. 05/09)
LASC Approved 10-03

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



Superior Court of California
County of Los Angeles



Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section



Consumer Attorneys
Association of Los Angeles



Southern California
Defense Counsel



Association of
Business Trial Lawyers



California Employment
Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆Los Angeles County Bar Association Litigation Section◆

◆ Los Angeles County Bar Association
Labor and Employment Law Section◆

◆Consumer Attorneys Association of Los Angeles◆

◆Southern California Defense Counsel◆

◆Association of Business Trial Lawyers◆

◆California Employment Lawyers Association◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:              FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lasuperiorcourt.org** under "Civil" and then under "General Information").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

    (INSERT DATE)                    (INSERT DATE)

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____
          (TYPE OR PRINT NAME)

Date:

_____
          (TYPE OR PRINT NAME)

Date:

_____
          (TYPE OR PRINT NAME)

Date:

_____
          (TYPE OR PRINT NAME)

Date:

_____
          (TYPE OR PRINT NAME)

Date:

_____
          (TYPE OR PRINT NAME)

Date:

_____
          (TYPE OR PRINT NAME)

➤ _____
          (ATTORNEY FOR PLAINTIFF)

➤ _____
          (ATTORNEY FOR DEFENDANT)

➤ _____
          (ATTORNEY FOR DEFENDANT)

➤ _____
          (ATTORNEY FOR DEFENDANT)

➤ _____
          (ATTORNEY FOR _____)

➤ _____
          (ATTORNEY FOR _____)

➤ _____
          (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:  
E-MAIL ADDRESS (Optional):  FAX NO. (Optional):  
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION -- DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER : |
|---|---|
| | |

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):    FAX NO. (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

LACIV 075 (new)
LASC Approved 04/11          **STIPULATION AND ORDER – MOTIONS IN LIMINE**          Page 2 of 2

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
FAX NO. (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference.
   - ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

1 | Edwin Aiwazian (SBN 232943)
**THE AIWAZIAN LAW FIRM**
2 | 410 West Arden Avenue, Suite 203
Glendale, California 91203
3 | Telephone (818) 265-1020
Facsimile  (818) 265-1021
4 |

*Attorneys for* Plaintiff

5 |

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

SEP 0 8 2011

John A. Clark, ~~~~~~~ ~~~er/Clerk
By _____ , Depu
GLORIETTA ROBINSON

6 |

7 |

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

9 |

KEVIN SHENKMAN, individually, and ) Case No. BC 467980
10 | on behalf of other members of the general )
public similarly situated, ) Hon. Ernest M. Hiroshige
11 | ) Dept. 54
)
12 | Plaintiffs, )
) **NOTICE OF NON-COMPLEX**
13 | vs. ) **DESIGNATION AND REASSIGNMENT**
)
14 | CHIPOTLE MEXICAN GRILL, INC., a )
Delaware corporation; and DOES 1 )
15 | through 100, inclusive, )
)
16 | )
Defendants. ) Complaint Filed: August 19, 2011
17 | )
)
18 | )
)

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

**THE AIWAZIAN LAW FIRM**
410 West Arden Avenue, Suite 203
Glendale, California 91203

EXHIBIT
C

NOTICE OF NON-COMPLEX DESIGNATION AND REASSIGNMENT

1

1    **TO ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2         **PLEASE TAKE NOTICE** that the Honorable Emilie H. Elias of Department 324

3    has determined that this case is non-complex and has reassigned it to the Honorable

4    Ernest M. Hiroshige in Department 54 at the Stanley Mosk Courthouse for all further

5    proceedings.  The Stanley Mosk Courthouse is located at 111 North Hill Street, Los

6    Angeles, CA 90012.

7         Any party objecting to the non-complex designation must file an objection and

8    proof of service in Department 324 within ten (10) days of service of the minute order.

9    Any response to the objection must be filed in Department 324 within seven (7) days of

10   service of the objection.  The Court will make its ruling on the submitted pleadings.

11        A true and correct copy of the Court's Minute Order is attached hereto as

12   Exhibit A.

     Dated: September 7, 2011                    **THE AIWAZIAN LAW FIRM**

13

14

15                                        BY:

16                                              Edwin Aiwazian
                                                *Attorneys for* Plaintiff
17

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

18

19

20

21

22

23

24

25

26

27

28

                                                                              2

**NOTICE OF NON-COMPLEX DESIGNATION AND REASSIGNMENT**

Ex.A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/01/11 | DEPT. 324 |
| HONORABLE EMILIE H. ELIAS    JUDGE | A. MORALES    DEPUTY CLERK |
| HONORABLE    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| NONE    Deputy Sheriff | NONE    Reporter |

| | | |
|---|---|---|
| 8:30 am | BC467980 | Plaintiff Counsel |
| | KEVIN SHENKMAN | NO APPEARANCES |
| | VS | Defendant |
| | CHIPOTLE MEXICAN GRILL INC | Counsel |
| | NON-COMPLEX (09-01-11) | |

**NATURE OF PROCEEDINGS:**


COURT ORDER

This Court makes its determination whether or not this
case should be deemed complex pursuant to Rule 3.400
of the California Rules of Court.

This case is designated non-complex and is reassigned
to Judge Ernest M. Hiroshige in Department 54 at
Stanley Mosk Courthouse for all further proceedings.

Plaintiff is ordered to serve a copy of this minute
order on all parties forthwith and file a proof of
service in Department 54 within five (5) days of
service.

Any party objecting to the non-complex designation
must file an objection and proof of service in
Department 324 within ten (10) days of service of this
minute order. Any response to the objection must be
filed in Department 324 within seven (7) days of
service of the objection. This Court will make its
ruling on the submitted pleadings.

                CLERK'S CERTIFICATE OF MAILING/
                  NOTICE OF ENTRY OF ORDER

              Page   1 of  2    DEPT. 324

| MINUTES ENTERED |
|---|
| 09/01/11 |
| COUNTY CLERK |

EXA

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/01/11 | DEPT. 324 |

| HONORABLE EMILIE H. ELIAS | JUDGE | A. MORALES | DEPUTY CLERK |
|---|---|---|---|
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE | Deputy Sheriff | NONE | Reporter |

| 8:30 am | BC467980 | Plaintiff Counsel | NO APPEARANCES |
|---|---|---|---|
| | KEVIN SHENKMAN VS CHIPOTLE MEXICAN GRILL INC | Defendant Counsel | |
| | NON-COMPLEX (09-01-11) | | |

**NATURE OF PROCEEDINGS:**

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
09-01-11 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: 09-01-11

John A. Clarke, Executive Officer/Clerk

By: _K. Bowen_____
　　　　K. BOWEN


THE AIWAZIAN LAW FIRM
Edwin Aiwazian, Esq.
410 West Arden Avenue, Suite 203
Glendale, California 91203

MINUTES ENTERED
09/01/11
COUNTY CLERK

1

**PROOF OF SERVICE**

2

*STATE OF CALIFORNIA, COUNTY OF LOS ANGELES*

3

4

5

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 410 West Arden Avenue, Suite 203, Glendale, California 91203.

6

7

     On September 7, 2011, I served the foregoing document(s) described as: **NOTICE OF NON-COMPLEX DESIGNATION AND REASSIGNMENT** on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:

8

9

10

National Registered Agents, Inc.
2875 Michelle Drive, Suite 100
Suite 100
Irvine, California 92606

11

*Agent for Service of Process* for Defendant Chipotle Mexican Grill

12

13

14

15

16

**[X]**    **BY U.S. MAIL**
As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with U.S. Postal Service on that day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

17

**[X]**    **STATE**
I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

18

19

Executed on September 7, 2011, at Glendale, California.

20

21

Suzana Solis

22

23

24

25

26

27

28

1   MESSNER & REEVES, LLC
    Charles C. Cavanagh (CA State Bar No. 198468)
2   1430 Wynkoop Street, Suite 300
    Denver, Colorado  80202
3   Telephone:  (303) 623-1800
    Facsimile:  (303) 623-0552
4   E-mail:  ccavanagh@messner.com

5
    SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
6   Sascha Henry (CA State Bar No. 191914)
    333 South Hope Street, 43rd Floor
7   Los Angeles, California  90071
    Telephone:  (213) 620-1780
8   Facsimile:  (213) 620-1398
    E-mail:  shenry@sheppardmullin.com
9

10  Attorneys for Defendant
    CHIPOTLE MEXICAN GRILL, INC.
11

12                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

13         IN AND FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

14

15

16                                    )  Case No.  BC467980
    KEVIN SHENKMAN, an Individual, and on )
17  behalf of other members of the general public )  **DEFENDANT CHIPOTLE MEXICAN GRILL,**
    similarly situated                    )  **INC.'S PEREMPTORY CHALLENGE TO**
18                                    )  **JUDGE ERNEST M. HIROSHIGUE**
                                      )  **PURSUANT TO CALIFORNIA CODE OF**
19            Plaintiffs,              )  **CIVIL PROCEDURE SECTION 170.6**
                                      )
20        v.                          )
                                      )  Action Filed:   August 19, 2011
21  CHIPOTLE MEXICAN GRILL, INC., a     )  Trial Date:     Not Set
    Delaware corporation; and DOES 1 to 100, )
22  Inclusive,                         )
                                      )
23            Defendants.              )
                                      )
24

25

26

27                                              **EXHIBIT**
                                                   **D**
28

---
    CHIPOTLE MEXICAN GRILL, INC.'S PEREMPTORY CHALLENGE TO JUDGE HIROSHIGUE

1         Defendant Chipotle Mexican Grill, Inc. hereby moves for an order granting their Peremptory

2 Challenge to Judge Ernest M. Hiroshigue pursuant to California Code of Civil Procedure Section

3 170.6.

4         This motion is made on the grounds that Judge Hiroshigue, to whom this action has been

5 assigned for all purposes, is prejudiced against defendant, or the interests of defendant, such that

6 defendant cannot, or its counsel believes that defendant cannot, have a fair and impartial hearing

7 before Judge Hiroshigue.

8         The Peremptory Challenge is based on this Motion; the accompanying Declaration of Charles

9 C. Cavanagh; and the complete files and records in this action.  Pursuant to California Code of Civil

10 Procedure Section 170.6, no notice is required.

11

12 Dated: September 22, 2011      MESSNER & REEVES, LLC
                                  SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP

13

14

15                         By: _____

16                             Charles C. Cavanagh
                            Attorney for Defendant

17                             CHIPOTLE MEXICAN GRILL, INC.

18

19

20

21

22

23

24

25

26

27

28

**CHIPOTLE MEXICAN GRILL, INC.'S PEREMPTORY CHALLENGE TO JUDGE HIROSHIGUE**

## DECLARATION OF CHARLES C. CAVANAGH

I, CHARLES C. CAVANAGH, declare as follows:

1.    I am an attorney, duly licensed to practice in the State of California, and am of counsel at the law firm Messner & Reeves, LLC, counsel of record in this action for defendant Chipotle Mexican Grill, Inc. ("Defendant").

2.    On September 7, 2011, counsel for plaintiff Kevin Shenkman gave notice that this action had been reassigned to Judge Ernest M. Hiroshigue for all purposes.  A true and correct copy of that notice is attached hereto as Exhibit A.

3.    Judge Hiroshigue is prejudiced against Defendant, or the interests of Defendant, such that Defendant cannot, or I believe that Defendant cannot, have a fair and impartial hearing before Judge Hiroshigue.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed at Denver, Colorado on September 21, 2011.

Charles C. Cavanagh

Edwin Aiwazian (SBN 232943)
**THE AIWAZIAN LAW FIRM**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Telephone (818) 265-1020
Facsimile   (818) 265-1021

*Attorneys for* Plaintiff

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

SEP 0 8 2011

John A. Clark~~~~~~~~~~~~~er/Clerk
By~~~~~~~~~~~~~~~~, Depu
GLORIETTA ROBINSON

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| KEVIN SHENKMAN, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. BC 467980<br><br>Hon. Ernest M. Hiroshige<br>Dept. 54<br><br>**NOTICE OF NON-COMPLEX DESIGNATION AND REASSIGNMENT**<br><br><br><br>Complaint Filed: August 19, 2011 |

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

**EXHIBIT**
tabbies*
A

1



1    **TO ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2           **PLEASE TAKE NOTICE** that the Honorable Emilie H. Elias of Department 324

3    has determined that this case is non-complex and has reassigned it to the Honorable

4    Ernest M. Hiroshigue in Department 54 at the Stanley Mosk Courthouse for all further

5    proceedings.  The Stanley Mosk Courthouse is located at 111 North Hill Street, Los

6    Angeles, CA 90012.

7           Any party objecting to the non-complex designation must file an objection and

8    proof of service in Department 324 within ten (10) days of service of the minute order.

9    Any response to the objection must be filed in Department 324 within seven (7) days of

10   service of the objection.  The Court will make its ruling on the submitted pleadings.

11          A true and correct copy of the Court's Minute Order is attached hereto as

12   Exhibit A.

     Dated: September 7, 2011                    **THE AIWAZIAN LAW FIRM**

13

14

15                                        BY:

16                                               Edwin Aiwazian
                                                 *Attorneys for* Plaintiff
17

18

19

20

21

22

23

24

25

26

27

28

THE AIWAZIAN LAW FIRM
410 West Arden Avenue, Suite 203
Glendale, California 91203

                                                                                      2

Ex.A

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 09/01/11 | | DEPT. 324 |
| HONORABLE EMILIE H. ELIAS   JUDGE | A. MORALES | DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE   Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 8:30 am | BC467980 | Plaintiff<br>Counsel |
| | KEVIN SHENKMAN<br>VS<br>CHIPOTLE MEXICAN GRILL INC | Defendant<br>Counsel |
| | NON-COMPLEX (09-01-11) | |

NO APPEARANCES

**NATURE OF PROCEEDINGS:**

COURT ORDER

This Court makes its determination whether or not this case should be deemed complex pursuant to Rule 3.400 of the California Rules of Court.

This case is designated non-complex and is reassigned to Judge Ernest M. Hiroshige in Department 54 at Stanley Mosk Courthouse for all further proceedings.

Plaintiff is ordered to serve a copy of this minute order on all parties forthwith and file a proof of service in Department 54 within five (5) days of service.

Any party objecting to the non-complex designation must file an objection and proof of service in Department 324 within ten (10) days of service of this minute order. Any response to the objection must be filed in Department 324 within seven (7) days of service of the objection. This Court will make its ruling on the submitted pleadings.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

Page   1 of   2   DEPT. 324

MINUTES ENTERED
09/01/11
COUNTY CLERK

EXA

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 09/01/11 | | DEPT. 324 |
| HONORABLE EMILIE H. ELIAS   JUDGE | A. MORALES | DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE   Deputy Sheriff | NONE | Reporter |

| 8:30 am | BC467980 | Plaintiff Counsel | NO APPEARANCES |
|---|---|---|---|
| | KEVIN SHENKMAN VS CHIPOTLE MEXICAN GRILL INC | Defendant Counsel | |
| | NON-COMPLEX (09-01-11) | | |

**NATURE OF PROCEEDINGS:**

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served Notice of Entry of the above minute order of 09-01-11 upon each party or counsel named below by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

Date: 09-01-11

John A. Clarke, Executive Officer/Clerk

By: *K. Bowen*
         K. BOWEN

THE AIWAZIAN LAW FIRM
Edwin Aiwazian, Esq.
410 West Arden Avenue, Suite 203
Glendale, California 91203

| MINUTES ENTERED |
|---|
| 09/01/11 |
| COUNTY CLERK |

# PROOF OF SERVICE

*STATE OF CALIFORNIA, COUNTY OF LOS ANGELES*

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 410 West Arden Avenue, Suite 203, Glendale, California 91203.

      On September 7, 2011, I served the foregoing document(s) described as: **NOTICE OF NON-COMPLEX DESIGNATION AND REASSIGNMENT** on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:

      National Registered Agents, Inc.
      2875 Michelle Drive, Suite 100
      Suite 100
      Irvine, California 92606

      *Agent for Service of Process* for Defendant Chipotle Mexican Grill

**[X]**    **BY U.S. MAIL**
As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. Postal Service on that day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

**[X]**    **STATE**
I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 7, 2011, at Glendale, California.

_____
Suzana Solis

EXHIBIT
E

1    MESSNER & REEVES, LLC
     Charles C. Cavanagh (CA State Bar No. 198468)
2    1430 Wynkoop Street, Suite 300
     Denver, Colorado 80202
3    Telephone: (303) 623-1800
     Facsimile: (303) 623-0552
4    E-mail: ccavanagh@messner.com

5    Attorneys for Defendant
     CHIPOTLE MEXICAN GRILL, INC.

6

7

                    UNITED STATES DISTRICT COURT
8
                    CENTRAL DISTRICT OF CALIFORNIA
9

10

11
                                        )   Case No.
12   KEVIN SHENKMAN, an Individual,     )
     and on behalf of other members of the )   **DECLARATION OF ROBERT WILNER**
13   general public similarly situated  )   **IN SUPPORT OF DEFENDANT**
                                        )   **CHIPOTLE MEXICAN GRILL, INC.'S**
14              Plaintiffs,             )   **NOTICE OF REMOVAL**
                                        )
15         v.                           )
                                        )   Removal Date: September 22, 2011
16   CHIPOTLE MEXICAN GRILL, INC.,      )   Trial Date:    Not Set
     a Delaware corporation; and DOES 1 to )
17   100 Inclusive,                     )
                                        )
18              Defendants.             )
                                        )
19

20

21         I, Robert Wilner, declare and state as follows:

22         1.    I am employed by Chipotle Mexican Grill, Inc. ("Chipotle") as the

23   Executive Director of People Support. I am providing this declaration in support of

24   Chipotle's Notice of Removal.

25         2.    I have been employed by Chipotle since September 1, 2002, and have

26   served as Chipotle's Executive Director of Human Resources or People Support since

27   January 1, 2009. I have also served as Chipotle's Chief Administrative Officer.

28   Through my experience as Chipotle's Chief Administrative Officer and Executive

1   Director of Human Resources, I have acquired personal knowledge of Chipotle's

2   corporate structure. I have also become personally familiar with each of Chipotle's

3   officers, executive directors, board members and regional directors and am

4   knowledgeable about the respective duties and responsibilities of each. I am also

5   generally familiar with Chipotle's restaurant locations and number of employees. I

6   have personal knowledge of all of the facts set forth below, and if called upon to

7   testify to them, I could and would do so competently and truthfully.

8       3.    Chipotle develops and operates fast-casual, fresh Mexican food

9   restaurants.

10      4.    Chipotle is an entity established under the laws of the State of Delaware.

11      5.    Chipotle's corporate headquarters is located at 1401 Wynkoop Street,

12  Suite 500, Denver, Colorado  80202. Chipotle employs approximately 150 people at

13  its Denver headquarters. True and correct copies of excerpts from Chipotle's Form

14  10-Q for the period ending June 30, 2011 – identifying 1401 Wynkoop Street, Suite

15  500, Denver, Colorado  80202, as the address of Chipotle's "Principal Executive

16  Offices" – are attached hereto as Exhibit A.

17      6.    Chipotle also operates a small executive office at 71 Gansevoort Street,

18  Suite 2A, New York, New York  10014. One of Chipotle's two co-Chief Executive

19  Officers and its Chief Marketing Officer split their time working between this office

20  and Chipotle's Denver headquarters.

21      7.    Chipotle also maintains a small office in Columbus, Ohio, where it

22  employs approximately 45 people who perform accounting functions. There are no

23  high level Chipotle officers who direct, control or coordinate the corporation's

24  activities from this small administrative office in Ohio.

25      8.    Chipotle also maintains a small administrative office in five of the six

26  regions into which its restaurants are divided:  Rocky Mountain, Pacific, Central,

27  South and Mid-Atlantic. The Rocky Mountain regional office is located within

28  Chipotle's Denver headquarters, at 1401 Wynkoop Street, Suite 500, Denver,

1  Colorado  80202.  The Pacific regional office is located at 2525 Natomas Park Drive,

2  Suite 105, Sacramento, California  95833.  The Central regional office is located at

3  1111 West 22nd Street, Suite 640, Oak Brook, Illinois  60523.  The South regional

4  office is located at 8140 North MoPac, Building 4, Suite 250, Austin, Texas  78759.

5  The Mid-Atlantic regional office is located at 8280 Greensboro Drive, Suite 100,

6  McLean, Virginia  22102.  Chipotle does not currently have an administrative office

7  in its Northeast region.

8       9.    The foregoing regional offices serve primarily as a base of operations for

9  each Regional Director, a small regional Human Resources staff and a small regional

10  Local Store Marketing staff.  The only people who regularly work out of each such

11  regional office are 4-5 People Support Consultants and/or People Support Specialists

12  who report, through their respective Regional People Directors, to the appropriate

13  Regional Director and, indirectly, to me.  Although some of the Regional Directors,

14  Regional People Directors, regional Language Development Consultants and regional

15  Local Store Marketing Directors and Consultants have dedicated office space in some

16  of these regional offices, each of them spends the significant majority of his or her

17  time working at, and traveling between, the restaurants in his or her respective region,

18  rather than at the regional office.  Each of these regional offices also serves as a base

19  of operations for a small regional facilities maintenance staff, which spends most of

20  its time working at the restaurants in the region, and which reports directly to

21  Chipotle's Denver headquarters.

22       10.   Other than the offices described in paragraphs 5-9, above, Chipotle does

23  not maintain any other executive or administrative offices.

24       11.   Chipotle's principal decision makers are its executive officers, executive

25  directors, board of directors and regional directors.

26       12.   Chipotle's executive officers consist of two co-Chief Executive Officers,

27  a Chief Financial Officer, a Chief Development Officer and a Chief Marketing

28  Officer.

- 3 -

1        13.   Chipotle's two co-Chief Executive Officers are the principal executive

2    officers of the corporation and are responsible for the total management of the

3    corporation by facilitating the operation of its business while guiding its officers and

4    employees in furtherance of the company's objectives.  One of Chipotle's two co-

5    Chief Executive Officers works from offices in Chipotle's corporate headquarters,

6    located at 1401 Wynkoop Street, Suite 500, Denver, Colorado  80202.  The other co-

7    Chief Executive Officer splits his time between Chipotle's executive office in New

8    York City and its headquarters in Denver.

9        14.   Chipotle's Chief Financial Officer is the corporation's principal financial

10   and accounting officer and is responsible for all financial, accounting and reporting

11   functions of the corporation, as well as for overseeing Information Technology,

12   training, safety, security and risk for the entire corporation.  Chipotle's Chief

13   Financial Officer works from an office in Chipotle's corporate headquarters, located

14   at 1401 Wynkoop Street, Suite 500, Denver, Colorado  80202.  True and correct

15   copies of excerpts from Chipotle's current Proxy Statement, which include a

16   description of the responsibilities of Chipotle's Chief Financial Officer, are attached

17   hereto as Exhibit B.

18       15.   Chipotle's Chief Development Officer is responsible for the physical

19   expansion of the corporation by overseeing the identification of new markets for

20   Chipotle restaurants and the construction of new restaurants in appropriate markets,

21   throughout the United States and internationally.  Chipotle's Chief Development

22   Officer works from an office in Chipotle's corporate headquarters, located at 1401

23   Wynkoop Street, Suite 500, Denver, Colorado  80202.

24       16.   Chipotle's Chief Marketing Officer is responsible for improving the

25   corporation's marketing direction and message, deepening its relationship with

26   customers and continuing to attract new customers.  As such the Chief Marketing

27   Officer oversees all advertising and promotional programs (including print, outdoor,

28   transit and radio advertisements), in-store communications and design elements (such

as menus and signs).  Chipotle's Chief Marketing Officer splits his time between

Chipotle's executive office in New York City and its headquarters in Denver.

17.   Chipotle's executive directors consist of an Executive Director of

International Development, an Executive Director of IT/Training/PD, an Executive

Director of Purchasing and myself.

18.   Chipotle's Executive Director of International Development is responsible

for the physical expansion of the corporation in international markets through the

identification of international markets for Chipotle restaurants and the construction of

new restaurants in appropriate international markets.  Chipotle's Executive Director

of International Development is currently working primarily in Europe, but maintains

an office in Chipotle's corporate headquarters, located at 1401 Wynkoop Street, Suite

500, Denver, Colorado  80202.

19.   Chipotle's Executive Director of IT/Training/PD is responsible for

maintaining and improving the corporation's integrated information system, which

manages the flow of information within each of Chipotle's restaurants and between

the restaurants and the corporate offices in Denver.  Chipotle's Executive Director of

IT/Training/PD works from an office in Chipotle's corporate headquarters, located at

1401 Wynkoop Street, Suite 500, Denver, Colorado  80202.

20.   Chipotle's Executive Director of Purchasing is responsible for overseeing

the procurement of food ingredients, equipment and supplies for all of Chipotle's

restaurants, throughout the United States and internationally.  Chipotle's Executive

Director of Purchasing works from an office in Chipotle's corporate headquarters,

located at 1401 Wynkoop Street, Suite 500, Denver, Colorado  80202.

21.   As Chipotle's Executive Director of People Support, I am responsible for

the design and implementation of strategies and policies relating to the management

of all Chipotle employees, throughout the United States and internationally, in

furtherance of the corporation's objectives.  I work from an office in Chipotle's

- 5 -

1   corporate headquarters, located at 1401 Wynkoop Street, Suite 500, Denver,

2   Colorado  80202.

3       22.   Chipotle's board of directors consists of seven members, including

4   Chipotle's two co-CEOs.  The members of Chipotle's board of directors are

5   responsible for adopting policies to support the corporation's values and to provide

6   good corporate governance for the entire corporation.  Chipotle's board of directors

7   typically meets three or four times per year in Denver, Colorado, and one time per

8   year in some other, varying location.

9       23.   Chipotle also employs one Regional Director in each of the six regions

10   into which its restaurants are divided:  Rocky Mountain, Pacific, Central, South, Mid-

11   Atlantic and Northeast.  Each region includes multiple states.  For example, the

12   Pacific region currently encompasses Washington, Oregon, Nevada and California.

13   Each Regional Director is responsible for business operations in his or her region but

14   reports to the co-Chief Executive Officer resident in Denver, who, along with the

15   other co-Chief Executive Officer, is ultimately responsible for all business operations.

16   Although some of these Regional Directors have dedicated office space in some of

17   the regional offices described in paragraphs 8-9, above, each of them spends the

18   significant majority of his or her time working at, and traveling between, the

19   restaurants in his or her respective region, rather than at the regional office.  The

20   Pacific Regional Director does not have a dedicated office at Chipotle's Pacific

21   regional office in Sacramento, California.

22       24.   None of Chipotle's executive officers, executive directors or board

23   members is a resident of, or regularly works from, California.  Chipotle's Pacific

24   Regional Director is a resident of California, but splits his time working at various

25   locations throughout Washington, Oregon, Nevada and California.  None of

26   Chipotle's other five Regional Directors is a resident of, or regularly works from,

27   California.

28

- 6 -

1      25.   Chipotle's Customer Service department is located in the corporation's

2    headquarters, at 1401 Wynkoop Street, Suite 500, Denver, Colorado 80202.

3      26.   Thus, although Chipotle currently employs over 29,000 people and, as of

4    June 30, 2011 (the date of its most recent Form 10-Q), operated 1131 restaurants

5    throughout the United States, as well as in Canada and the United Kingdom, almost

6    all of the corporation's high level officers who direct, control and coordinate its

7    activities work from Chipotle's corporate headquarters, located at 1401 Wynkoop

8    Street, Suite 500, Denver, Colorado 80202, with two of the executive officers also

9    working part of their time from New York and one executive director working

10   primarily from London. Of the corporation's several principal decision makers, only

11   the Pacific Regional Director is a resident of California, but he splits his time

12   working throughout that state and in other states.

13      27.   As such, virtually all of Chipotle's core executive and operational

14   functions are carried out from its Denver headquarters, and, to a much lesser extent,

15   from its small executive office in New York City. With the exception of some

16   accounting functions that are performed by employees in Columbus, Ohio, Chipotle's

17   major administrative functions are conducted in its Denver headquarters, as well.

18      28.   Chipotle's Denver corporate headquarters is not simply an office where

19   the corporation holds its board meetings or where its principal decision makers can

20   work when they happen to be in Colorado.

21      I swear and declare under penalty of perjury under the laws of the United

22   States of America and the State of California that the foregoing is true and correct to

23   the best of my knowledge.

24

25   Executed this _19th_ day of September, 2011, at Denver, Colorado.

26

27                             Robert Wilner

28

**WILNER DECLARATION IN SUPPORT OF NOTICE OF REMOVAL**

Table of Contents

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

# FORM 10-Q

☒    **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended June 30, 2011

or

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from         to

Commission File Number: 1-32731

# CHIPOTLE MEXICAN GRILL, INC.
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **84-1219301** |
| (State or other jurisdiction of incorporation or organization) | (IRS Employer Identification No.) |
| **1401 Wynkoop St., Suite 500 Denver, CO** | **80202** |
| (Address of Principal Executive Offices) | (Zip Code) |

Registrant's telephone number, including area code: (303) 595-4000

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 of 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.    ☒ Yes    ☐ No

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).    ☒ Yes    ☐ No

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company. See definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ (Do not check if a smaller reporting company) | Smaller reporting company | ☐ |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).    ☐ Yes    ☒ No

As of July 18, 2011 there were 31,345,733 shares of the registrant's common stock, par value of $0.01 per share outstanding.



Table of Contents

**Chipotle Mexican Grill, Inc.**
**Notes to Condensed Consolidated Financial Statements**
**(unaudited)**
**(dollar and share amounts in thousands, unless otherwise specified)**

**1. Basis of Presentation**

Chipotle Mexican Grill, Inc. (the "Company"), a Delaware corporation, develops and operates fast-casual, fresh Mexican food restaurants throughout the United States. The Company also has two restaurants in Toronto, Canada and one in London, England. As of June 30, 2011, the Company operated 1,131 restaurants. The Company is transitioning the management of its operations from five regions to six regions and has aggregated its operations to one reportable segment.

The accompanying unaudited condensed consolidated financial statements of the Company have been prepared in accordance with U.S. generally accepted accounting principles for interim financial statements and pursuant to the rules and regulations of the Securities and Exchange Commission. In the opinion of management, the accompanying unaudited condensed consolidated financial statements reflect all adjustments consisting of normal recurring adjustments necessary for a fair presentation of its financial position and results of operations. Interim results of operations are not necessarily indicative of the results that may be achieved for the full year. The financial statements and related notes do not include all information and footnotes required by U.S. generally accepted accounting principles for annual reports. This quarterly report should be read in conjunction with the consolidated financial statements included in the Company's annual report on Form 10-K for the year ended December 31, 2010.

The Company has evaluated subsequent events and transactions for potential recognition or disclosure in the financial statements through the day the financial statements are issued.

**2. Recently Issued Accounting Standards**

In May 2011, the Financial Accounting Standards Board ("FASB") issued Accounting Standards Update ("ASU") No. 2011-04, "Amendments to Achieve Common Fair Value Measurement and Disclosure Requirements in U.S. GAAP and International Financial Reporting Standards ("IFRS")." This pronouncement was issued to provide a consistent definition of fair value and ensure that the fair value measurement and disclosure requirements are similar between U.S. GAAP and IFRS. ASU 2011-04 changes certain fair value measurement principles and enhances the disclosure requirements particularly for level 3 fair value measurements. This pronouncement is effective for reporting periods beginning on or after December 15, 2011. The adoption of ASU 2011-04 is not expected to have a significant impact to the Company's consolidated financial position or results of operations.

In June 2011, the FASB issued ASU No. 2011-05, "Presentation of Comprehensive Income." ASU 2011-05 eliminates the option to report other comprehensive income and its components in the statement of changes in stockholders' equity and requires an entity to present the total of comprehensive income, the components of net income and the components of other comprehensive income either in a single continuous statement or in two separate but consecutive statements. This pronouncement is effective for fiscal years, and interim periods within those years, beginning after December 15, 2011. The Company believes the adoption of ASU 2011-05 concerns presentation and disclosure only and will not have an impact on its consolidated financial position or results of operations.

**3. Comprehensive Income**

The following table presents comprehensive income for the three and six months ended June 30, 2011 and 2010.

|  | Three months ended June 30 | | Six months ended June 30 | |
|  | 2011 | 2010 | 2011 | 2010 |
|---|---|---|---|---|
| Net income | $ 50,657 | $ 46,461 | $ 97,039 | $ 84,308 |
| Foreign currency translation adjustments | 107 | 50 | 725 | (109) |
| Comprehensive income | $ 50,764 | $ 46,511 | $ 97,764 | $ 84,199 |

**4. Loss on Equity Method Investment**

During the three and six months ended June 30, 2011, the Company recognized losses of $2,367 and $2,486, respectively, on its equity method investment in ANGR Holdings, LLC, which operated the restaurants awarded on the television program America's Next Great Restaurant prior to their closure. The recognized losses, which represent the entire amount of our investment, are included in interest and other expense in the condensed consolidated statement of income.

5

**CHIPOTLE MEXICAN GRILL, INC.**
1401 Wynkoop Street, Suite 500
Denver, Colorado 80202

**PROXY STATEMENT**

### ANNUAL MEETING INFORMATION

This proxy statement contains information related to the annual meeting of shareholders of Chipotle Mexican Grill, Inc. to be held on Wednesday, May 25, 2011, beginning at 8:00 a.m. at The Westin Tabor Center, 1672 Lawrence Street, Denver, Colorado. This proxy statement was prepared under the direction of Chipotle's Board of Directors to solicit your proxy for use at the annual meeting. It will be made available to shareholders on or about April 7, 2011.

#### *Who is entitled to vote and how many votes do I have?*

If you were a shareholder of record of our common stock on March 30, 2011, you are entitled to vote at the annual meeting, or at any postponement or adjournment of the annual meeting. On each matter to be voted on, you may cast one vote for each share of common stock you hold. As of March 30, 2011 there were 31,117,371 shares of common stock outstanding and entitled to vote.

#### *What am I voting on?*

You will be asked to vote on six proposals:

**Proposal A** – Election of two directors: John S. Charlesworth and Montgomery F. Moran.

**Proposal B** – Approval of the Chipotle Mexican Grill, Inc. 2011 Stock Incentive Plan.

**Proposal C** – Approval of the Chipotle Mexican Grill, Inc. Employee Stock Purchase Plan.

**Proposal D** – An advisory vote on the compensation of our executive officers as disclosed in this proxy statement ("say-on-pay").

**Proposal E** – An advisory vote on the frequency of say-on-pay votes.

**Proposal F** – Ratification of the selection of Ernst & Young LLP as our independent registered public accounting firm for the year ending December 31, 2011.

The Board of Directors is not aware of any other matters to be presented for action at the meeting.

#### *How does the Board of Directors recommend I vote on the proposals?*

The Board of Directors recommends a vote **FOR** each candidate for director, **FOR** proposals B, C, D and F, and in favor of holding an advisory vote on the compensation of our executive officers every **three** years.

#### *How do I vote?*

If you hold your shares through a broker, bank, or other nominee in "street name," you need to submit voting instructions to your broker, bank or other nominee in order to cast your vote. In most instances you can do this over the Internet. The Notice of Internet Availability of Proxy Materials that was mailed to you has specific instructions for how to submit your vote, or if you have received or request a hard copy of this proxy statement you may mark, sign, date and mail the accompanying voting instruction form in the postage-paid envelope provided. Your vote is revocable by following the procedures outlined in this proxy statement. However, since you are not a shareholder of record you may not vote your shares in person at the meeting without obtaining authorization from your broker, bank or other nominee.

1



## EXECUTIVE OFFICERS AND COMPENSATION

**EXECUTIVE OFFICERS**

In addition to Steve Ells, our Chairman of the Board and Co-Chief Executive Officer, and Monty Moran, our Co-Chief Executive Officer, each of whose biographies are included under the heading "Information Regarding the Board of Directors," our executive officers are as follows:

*John R. (Jack) Hartung*, 53, is Chief Financial Officer and has served in this role since 2002. In addition to having responsibility for all of our financial and reporting functions, Mr. Hartung also oversees IT, training, and safety, security and risk. Mr. Hartung joined Chipotle after spending 18 years at McDonald's where he held a variety of management positions, most recently as Vice President and Chief Financial Officer of its Partner Brands Group. Mr. Hartung has a Bachelor of Science degree in accounting and economics as well as an MBA from Illinois State University.

*Robert (Bob) N. Blessing Jr.*, 67, was appointed Chief Development Officer as of February 1, 2010. Mr. Blessing came to Chipotle in 1999 as a regional director, and opened our first restaurant in the Northeast region. His role expanded thereafter to include responsibility for additional markets, and from 2005 to 2008 he led our entire Northeast and Central regions. From May 2008 though February 1, 2010, he served as our Restaurant Support Officer, providing field support for our marketing as well as overseeing our five regional directors and our purchasing function. Before coming to Chipotle, he served in executive leadership roles at a number of food service and restaurant companies, including Vie de France Retail and Restaurant Bakery, Franchise Management Corporation (an Arby's franchisee), and Thompson Hospitality (a contract food service company). Mr. Blessing has Bachelors and Masters degrees in business administration/economics from the University of Cincinnati.

*Mark Crumpacker*, 48, was appointed Chief Marketing Officer in January 2009. From December 2002 until December 2008 Mr. Crumpacker was Creative Director for Sequence, LLC, a strategic design and marketing consulting firm he co-founded in 2002, and prior to that served as creative director and in other leadership roles for a variety of design and media companies. Mr. Crumpacker attended the University of Colorado and received his B.F.A. from the Art College of Design in Pasadena, California.

**COMPENSATION DISCUSSION AND ANALYSIS**

This Compensation Discussion and Analysis describes the objectives and principles underlying our executive compensation programs, outlines the material elements of the compensation of our executive officers and explains the Compensation Committee's determinations as to the actual compensation of our executive officers for 2010. In addition, this Compensation Discussion and Analysis is intended to put into perspective the tables and related narratives which follow it regarding the compensation of our executive officers.

**Executive Summary**

To make decisions regarding the compensation of our executive officers, the Compensation Committee of our Board of Directors considers company performance. Determinations of base salaries and long-term incentives awards for 2010 were made early in the year, and were formulated in light of our past performance, including in particular our extremely strong company performance during 2009. The compensation awarded included significant grants of SOSARs, which ensure that the executive officers will only be rewarded if we continue to achieve gains for our shareholders, and align executive and shareholder interests by granting our executive officers a meaningful share of the shareholder value created by our company over time. Our performance in 2010 also resulted in payouts under our Annual Incentive Plan that were well above target.

Our strong net income growth during 2009 and 2010 also resulted in achievement of the performance goal associated with performance shares awarded to the executive officers in 2008. As a result, those awards vested

1  MESSNER & REEVES, LLC
   Charles C. Cavanagh (CA State Bar No. 198468)
2  1430 Wynkoop Street, Suite 300
   Denver, Colorado 80202
3  Telephone: (303) 623-1800
   Facsimile: (303) 623-0552
4  E-mail: ccavanagh@messner.com

5  Attorneys for Defendant
   CHIPOTLE MEXICAN GRILL, INC.

6

7

8                   UNITED STATES DISTRICT COURT

                    CENTRAL DISTRICT OF CALIFORNIA
9

10

11

12  KEVIN SHENKMAN, an Individual,      )  Case No.
    and on behalf of other members of the )  **DECLARATION OF RYAN MURRIN IN**
13  general public similarly situated      )  **SUPPORT OF DEFENDANT CHIPOTLE**
                                        )  **MEXICAN GRILL, INC.'S NOTICE OF**
14          Plaintiffs,                 )  **REMOVAL**
                                        )
15       v.                             )
                                        )  Removal Date: September 22, 2011
16  CHIPOTLE MEXICAN GRILL, INC.,       )  Trial Date:    Not Set
    a Delaware corporation; and DOES 1 to )
17  100 Inclusive,                      )
                                        )
18          Defendants.                 )
                                        )
19

20

21       I, Ryan Murrin, declare and state as follows:

22       1.    I am employed by Chipotle Mexican Grill, Inc. ("Chipotle") as the

23  Director, Advertising, Research & Direct. I am providing this declaration in support

24  of Chipotle's Notice of Removal. I have personal knowledge of all of the facts set

25  forth below, and if called upon to testify to them, I could and would do so

26  competently and truthfully.

27

28

**EXHIBIT**
**F**

2.   Through my experience as Chipotle's Director, Advertising, Research & Direct, I have acquired personal knowledge of, and familiarity with, how Chipotle conducts print advertising campaigns.

3.   Chipotle currently retains a media buying firm, Compass Point Media, to arrange for placement of all of its print advertising. At my request, Compass Point Media has provided me with a chart indicating the gross print advertising rates – pulled directly from the publishers' website rate cards – for the major daily newspapers in Los Angeles, San Francisco, San Diego and Sacramento. A true and correct copy of that advertising rate chart is attached hereto as **Exhibit A**.

I swear and declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct to the best of my knowledge.

Executed this *19th* day of September, 2011, at Denver, Colorado.

Ryan Murrin

MURRIN DECLARATION IN SUPPORT OF NOTICE OF REMOVAL

# 2011 Newspaper Request - Chipotle
## 9/16/2011

| | Gross Mon- Wed Full Page BW | Gross Thur-Sat Full Page BW | Gross Sun Full Page BW | Gross Additional Color Charge Mon-Thur |
|---|---|---|---|---|
| Sacramento Bee | $17,936 | $19,419 | $24,889 | $2,353 |
| San Francisco Chronicle | $45,529 | $45,529 | $50,082 | $4,659 |
| LA Times | $53,271 | $53,271 | $71,024 | $17,756 |
| San Diego Union-Tribune | $30,353 | $34,299 | $43,405 | $3,335 |

All Rates are based on open newspaper rates and GROSS dollars



EXHIBIT
*Murrin*
*A*

1   MESSNER & REEVES, LLC
    Charles C. Cavanagh (CA State Bar No. 198468)
2   1430 Wynkoop Street, Suite 300
    Denver, Colorado  80202
3   Telephone:  (303) 623-1800
    Facsimile:  (303) 623-0552
4   E-mail:  ccavanagh@messner.com

5   Attorneys for Defendant
    CHIPOTLE MEXICAN GRILL, INC.

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9

10

11

12   KEVIN SHENKMAN, an Individual,        )   Case No.
     and on behalf of other members of the )   **DECLARATION OF KIRSTEN**
13   general public similarly situated     )   **HELGELAND IN SUPPORT OF**
                                           )   **DEFENDANT CHIPOTLE MEXICAN**
14              Plaintiffs,                 )   **GRILL, INC.'S NOTICE OF REMOVAL**
                                           )
15         v.                              )
                                           )   Removal Date:  September 22, 2011
16   CHIPOTLE MEXICAN GRILL, INC.,          )   Trial Date:       Not Set
     a Delaware corporation; and DOES 1 to )
17   100 Inclusive,                         )
                                           )
18              Defendants.                 )
                                           )
19

20

21         I, Kirsten Helgeland, declare and state as follows:

22         1.    I am employed by Chipotle Mexican Grill, Inc. ("Chipotle") as a

23   Marketing Program Manager.  I am providing this declaration in support of

24   Chipotle's Notice of Removal.  I have personal knowledge of all of the facts set forth

25   below, and if called upon to testify to them, I could and would do so competently and

26   truthfully.

27

28

EXHIBIT

G

2.    Through my experience as one of Chipotle's Marketing Program Managers, I have acquired personal knowledge of, and experience with, Chipotle's preparation and purchase of the paper menus that it places in its restaurants.

3.    As of June 30, 2011, the date of Chipotle's most recently filed Form 10-Q, Chipotle operates 181 restaurants in California and 11 in Nevada.

4.    Chipotle recently purchased from Trident Communications Group, Inc. 192,000 paper menus to be distributed evenly among Chipotle's 192 restaurants in California and Nevada.  The total cost of these menus was $22,848.  A true and correct copy of an invoice from Trident Communications Group, Inc. to Chipotle for the purchase of these 192,000 menus is attached hereto as **Exhibit A**.

I swear and declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct to the best of my knowledge.

Executed this  19  day of September, 2011, at Denver, Colorado.

Kirsten Helgeland

HELGELAND DECLARATION IN SUPPORT OF NOTICE OF REMOVAL

Trident Communications Group, Inc.
3100 E. Stanford Drive
Englewood, CO 80113

**BILL TO**

Chipotle
c/o Martha Scott
1401 Wynkoop St.
Suite 500
Denver, CO 80202

| | DATE | INVOICE # |
|---|---|---|
| | 7/8/2011 | 19328 |

| P.O. NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | PROJECT |
|---|---|---|---|---|---|---|
| | Net 10 | TWB | 7/8/2011 | | | |

| QUANTITY | ITEM CODE | DESCRIPTION | PRICE EACH | AMOUNT |
|---|---|---|---|---|
| 192,000 | Printing | CA/NV Store menu roll-out: new art each store w/nutritional changes, 1000/store menus per store, 192 stores, price adj.pack/ship/rush | 0.119 | 22,848.00T |
| | | Out-of-state sale, exempt from sales tax | 0.00% | 0.00 |

*Please split the total amount btw stores in CA — NV.*

| CATEGORY | MKT/STORE/DEPT/REGION |
|---|---|
| 6710 | |
| DESCRIPTION | |
| Store menus. | |
| FCL MONTH | DATE OK | APPROVAL |
| Sept | 9/14/11 | |

**Total** $22,848.00

Pay online at:: https://ipn.intuit.com/973rwgg3

| Phone # | Fax # | E-mail |
|---|---|---|
| 303-783-2833 | 303-783-2839 | tbremer@tcgink.net |



EXHIBIT
Helgeland
A

EXHIBIT

*H*

1    MESSNER & REEVES, LLC
       Charles C. Cavanagh (CA State Bar No. 198468)
2    1430 Wynkoop Street, Suite 300
       Denver, Colorado 80202
3    Telephone: (303) 623-1800
       Facsimile: (303) 623-0552
4    E-mail: ccavanagh@messner.com

5    Attorneys for Defendant
       CHIPOTLE MEXICAN GRILL, INC.

6

7

8                UNITED STATES DISTRICT COURT

               CENTRAL DISTRICT OF CALIFORNIA
9

10

11                                   Case No.

12    KEVIN SHENKMAN, an Individual,    **DECLARATION OF SHAUNA HARVEY**
       and on behalf of other members of the    **IN SUPPORT OF DEFENDANT**
13    general public similarly situated    **CHIPOTLE MEXICAN GRILL, INC.'S**
                                  **NOTICE OF REMOVAL**
14               Plaintiffs,

15           v.                      Removal Date: September 22, 2011
16    CHIPOTLE MEXICAN GRILL, INC.,    Trial Date:      Not Set
       a Delaware corporation; and DOES 1 to
17    100 Inclusive,

18              Defendants.

19

20

21        I, Shauna Harvey, declare and state as follows:

22        1.    I am employed by Chipotle Mexican Grill, Inc. ("Chipotle") as the

23    Director of Financial Planning & Analysis. I am providing this declaration in support

24    of Chipotle's Notice of Removal. I have personal knowledge of all of the facts set

25    forth below, and if called upon to testify to them, I could and would do so

26    competently and truthfully.

27        2.    Through my experience as Chipotle's Director of Financial Planning &

28    Analysis, I have personal knowledge of, and experience with, the various databases,

1   tools and other information that Chipotle uses to measure its sales and to track its

2   inventory.

3       3.   When a sales transaction is entered into the point-of-sale terminal located

4   in one of Chipotle's restaurants, information relating to the transaction is daily

5   captured and replicated on Chipotle's internal data warehousing database, Datamart.

6       4.   According to a search that I ran on Chipotle's Datamart database, the total

7   amount of Chipotle's net sales in California since August 19, 2007, plus the total

8   retail value of the complimentary food that Chipotle has given away to consumers in

9   California since August 19, 2007, is $1,146,558,665.  That total resulted from

10   113,914,194 total sales transactions and complimentary transactions.  Dividing the

11   $1,146,558,665 in sales and complimentary food by the 113,914,194 total sales and

12   complimentary transactions yields an average gross transaction value of $10.07.

13       5.   I have reviewed a database of invoice information relating to the quantity

14   of pinto beans that Chipotle has purchased for service to customers in California.

15   According to the information that I have reviewed, Chipotle has purchased 523,159

16   cases of pinto beans for service to customers in California since August 19, 2007,

17   which comes to a total of 13,340,555 pounds, or 213,448,872 ounces of pinto beans

18   purchased by Chipotle for service to customers in California since August 19, 2007.

19       6.   Based upon the theoretical recipes that Chipotle maintains on its

20   eRestaurant Services database, the theoretical portion size of pinto beans given to

21   each customer who requests an entrée-type item containing pinto beans is 4 ounces

22   and the theoretical portion size of pinto beans given to each customer who requests a

23   smaller item containing pinto beans is 2 ounces.

24       7.   According to a search that I ran on Chipotle's Datamart database,

25   Chipotle has sold 156,173,176 entrée-type items that could potentially have contained

26   pinto beans in California since August 19, 2007, meaning that – when multiplied by 4

27   ounces each – Chipotle potentially could have sold 624,692,704 ounces of pinto

28   beans in its entrees in California since August 19, 2007.

HARVEY DECLARATION IN SUPPORT OF NOTICE OF REMOVAL

8.    According to a search that I ran on Chipotle's Datamart database, Chipotle has sold 7,748,169 smaller items that could potentially have contained pinto beans in California since August 19, 2007, meaning that – when multiplied by 2 ounces each – Chipotle potentially could have sold 15,496,338 ounces of pinto beans in its smaller items in California since August 19, 2007.  Thus, based on the number of entrée-type and smaller items actually sold by Chipotle in California since August 19, 2007, Chipotle had the potential to sell 640,189,042 ounces of pinto beans.

9.    From dividing the 640,189,042 total ounces of pinto beans that Chipotle could have sold in California since August 19, 2007, into the 213,448,872 ounces of pinto beans that Chipotle purchased for service to customers in California during that period, I derived that the approximate percentage of items sold that could have contained pinto beans that were likely to have contained pinto beans was 33%.

10.    Multiplying that percentage by the 113,914,194 total sales transactions and complimentary transactions in California since August 19, 2007, I deduced that the approximate number of transactions in California since August 19, 2007, that were likely to have included pinto beans was 37,209,610.

11.    Multiplying the 37,209,610 transactions in California since August 19, 2007, that were likely to have included pinto beans by the $10.07 average gross transaction value yields an estimated gross sales value of items likely to have contained pinto beans in California since August 19, 2007, of $374,518,741.

12.    Through my experience as Chipotle's Director of Financial Planning & Analysis, I have also acquired personal knowledge of, and experience with, determining the costs to Chipotle of its in-store menu boards.  Based upon my review of recent invoices from Chipotle's menu board vendor, the in-store menu boards currently used by Chipotle in California cost approximately $65 each.  Therefore, the cost to Chipotle of replacing one menu board in each of the 181 restaurants that it had in California as of June 30, 2011 (the date of Chipotle's most recently Form 10-Q), would be $11,765.

- 3 -

1         I swear and declare under penalty of perjury under the laws of the United

2    States of America and the State of California that the foregoing is true and correct to

3    the best of my knowledge.

4

5         Executed this 20ᵗʰ day of September, 2011, at Denver, Colorado.

6

7

8    Shauna Harvey

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

HARVEY DECLARATION IN SUPPORT OF NOTICE OF REMOVAL

EXHIBIT
I

1   MESSNER & REEVES, LLC
    Charles C. Cavanagh (CA State Bar No. 198468)
2   1430 Wynkoop Street, Suite 300
    Denver, Colorado 80202
3   Telephone: (303) 623-1800
    Facsimile: (303) 623-0552
4   E-mail: ccavanagh@messner.com

5   Attorneys for Defendant
    CHIPOTLE MEXICAN GRILL, INC.
6

7
                    UNITED STATES DISTRICT COURT
8
                    CENTRAL DISTRICT OF CALIFORNIA
9

10

11
                                      )   Case No.
12  KEVIN SHENKMAN, an Individual,     )
    and on behalf of other members of the ) **DECLARATION OF SHANNON KYLLO**
13  general public similarly situated  ) **IN SUPPORT OF DEFENDANT**
                                      )   **CHIPOTLE MEXICAN GRILL, INC.'S**
14              Plaintiffs,            )   **NOTICE OF REMOVAL**
                                      )
15          v.                        )
                                      )   Removal Date: September 22, 2011
16  CHIPOTLE MEXICAN GRILL, INC.,     )   Trial Date:    Not Set
    a Delaware corporation; and DOES 1 to )
17  100 Inclusive,                    )
                                      )
18              Defendants.           )
                                      )
19

20

21          I, Shannon Kyllo, declare and state as follows:

22          1.    I am employed by Chipotle Mexican Grill, Inc. ("Chipotle") as a

23  Customer Service Manager. I am providing this declaration in support of Chipotle's

24  Notice of Removal. I have personal knowledge of all of the facts set forth below, and

25  if called upon to testify to them, I could and would do so competently and truthfully.

26          2.    Through my experience as one of Chipotle's Customer Service Managers,

27  I have acquired personal knowledge of, and experience with, the various ways in

28  which Chipotle receives, and responds to, customer comments and complaints.

---

**KYLLO DECLARATION IN SUPPORT OF NOTICE OF REMOVAL**

1       3.    One of the channels through which Chipotle commonly receives customer

2   comments and complaints is through its Internet website.

3       4.    When a customer sends Chipotle a comment or complaint through its

4   Internet website, it is automatically routed to an Information Technology tool we

5   refer to as the "Customer Comments Admin Section." Once in that tool, Chipotle's

6   customer service employees respond to and categorize each comment or complaint.

7   All comments or complaints are saved in the "Customer Comments Admin Section,"

8   where they may be searched and reviewed.

9       5.    According to searches that I ran in Chipotle's "Customer Comments

10  Admin Section," Chipotle has received, since August 19, 2007, 15 Internet

11  complaints from transactions arising out of its California restaurants regarding the

12  fact that Chipotle's pinto beans are cooked with bacon.

13      I swear and declare under penalty of perjury under the laws of the United

14  States of America and the State of California that the foregoing is true and correct to

15  the best of my knowledge.

16

17      Executed this 19th day of September, 2011, at Denver, Colorado.

18

19                                         Shannon Kyllo

20

21

22

23

24

25

26

27

28

- 2 -